# EXHIBIT A



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

# Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**June 21, 2022 13:37**

By: CASEY P. O'BRIEN 0072378

Confirmation Nbr. 2581354

WESLEY REDDING                               CV 22 964993

vs.

TRUCK SERVICE, INC.                  **Judge:** SHERRIE MIDAY

**Pages Filed:** 126

IN THE COMMON PLEAS COURT
CUYAHOGA COUNTY, OHIO

WESLEY REDDING   :   CASE NO.
338 Irma Drive   :
Chardon, OH 44024   :   JUDGE
  :
     Plaintiff   :   **COMPLAINT FOR:**
  :
vs.   :   **(1) SEXUAL HARASSMENT/**
  :   **HOSTILE WORK**
TRUCK SERVICE, INC.   :   **ENVIRONMENT**
c/o Donald L. Jones, Statutory Agent   :   **(2) AGE DISCRIMINATION**
3404 Superior Avenue   :   **(3) GENDER DISCRIMINATION**
Cleveland, OH 44114   :   **(4) RACIAL DISCRIMINATION**
  :   **(5) RETALIATION**
     Defendant   :   **(6) WRONGFUL TERMINATION**
  :   **IN VIOLATION OF PUBLIC**
  :   **POLICY**
  :   **(7) COVID-INTENTIONAL TORT**
  :   **(8) ASSAULT**
  :   **(9) INTENTIONAL INFLICTION**
  :   **OF EMOTIONAL DISTRESS**
  :   **(10) NEGLIGENT INFLICTION OF**
  :   **EMOTIONAL DISTRESS**
  :   **(11) INTERFERENCE WITH**
  :   **BUSINESS RELATIONSHIP**
  :   **(12) SLANDER**
  :   **(13) RESPONDEAT SUPERIOR**
  :   **(14) NONPAYMENT OF**
  :   **OVERTIME**
  :   **(15) BREACH OF EMPLOYMENT**
  :   **CONTRACT**
  :   **(16) PUNITIVE DAMAGES**
  :
  :   **WITH JURY DEMAND**

Now comes the Plaintiff, WESLEY REDDING, by and through the undersigned

legal counsel and hereby states his complaint as follows:

IBOLD & O'BRIEN
401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

## PARTIES, JURISDICTION AND VENUE

1.  At all times relevant to this action Plaintiff was a resident of the State of Ohio.

2.  Defendant, TRUCK SERVICE, INC., registered in the State of Indiana and an active foreign corporation registered with the Ohio Secretary of State doing business in the State of Ohio at 3404 Superior Avenue, Cleveland, Cuyahoga County, Ohio and as E.A.B. Truck Service, located at 7951 Granger Road, Valley View, Ohio.

3.  Plaintiff has exhausted his administrative remedies by filing a complaint with the US Equal Employment Opportunity Commission who issued a determination and Notice of Rights letter on March 31, 2022, in Charge no. 532-2020-02446 titled Wesley J. Redding vs. Truck Service Inc. See Exhibit "A" attached.

4.  The employment practices and actions alleged herein to be unlawful were committed within the County of Cuyahoga.

5.  Plaintiff started his employment with Defendant Truck Service, Inc. as a Service Advisor at the Valley View, Ohio location on August 1, 2016.

6.  Plaintiff was hired as an at-will employee.

7.  Plaintiff was terminated from his position effective August 3, 2020.

8.  At all times relevant to this matter Matt Lewis was the Regional Manager for Truck Service, Inc.

9.  At all times relevant to this matter Jim Lee was an Assistant General Manager at Defendant's Valley View location.

10. At all times relevant to this matter Don Snyder was a Service Advisor at Defendant's Valley View Location.

11. At all times relevant to this matter Bruce Zavotka was an Outside Sales

IBOLD & O'BRIEN
401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

Representative at Defendant's Superior Avenue and Valley View locations.

12. Jurisdiction and venue are proper with this Court.

## COUNT I
**Sexual Harassment - Hostile Work Environment**

13. Plaintiff incorporates by reference, as if fully rewritten herein, all of the statements in Paragraphs 1 through 12 above.

14. Since Plaintiff's hiring in 2016 through his termination on August 3, 2020, Defendant's employees, including Plaintiff's supervisors, began a course of offensive conduct to sexually harass Plaintiff in numerous ways, all of which were electronically recorded by Plaintiff.

15. Matt Lewis, Don Snyder, Jim Lee and Bruce Zavotka would repeatedly make crude sexual remarks about Plaintiff's body, including remarks in reference to Plaintiff's penis, sexual preference, " being a "flamer," etc.

16. Matt Lewis, Don Snyder, Jim Lee and Bruce Zavotka continually made offensive sexual remarks to Plaintiff, including, but not limited to:

   a. February 15, 2017 - Matt Lewis, the Regional Manager, made lewd and inappropriate remarks to Plaintiff about sticking his penis in Plaintiff's wife.

   b. March 29, 2017 - Matt Lewis, "I am going to work his ass and microscope his rear anal canal."

   c. On October 4, 2017 - Don Snyder's statement in response to Plaintiff's answer that he pulled millimeter size bolts, "not what's in your pants."

   d. October 5, 2017, November 21, 2017 - Don Snyder repeatedly states

IBOLD & O'BRIEN
401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3611

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

Plaintiff "sucks dick."

e. October 14, 2017, January 12, 2018, February 12, 2018, March 6, 2018 - Don Snyder, "on your knees" referring to a sexual position.

f. November 28, 2017 - Matt Lewis calls Plaintiff a male escort.

g. December 14, 2017 - Matt Lewis refers to Plaintiff as a "stud."

h. January 22, 2018 - Don Snyder and Matt Lewis talk about Plaintiff having a threesome.

i. January 24, 2018 - Matt Lewis told Plaintiff to bend over, referring to a sexual position.

j. March 15, 2018 - Matt Lewis talks about being under his desk, implying a "blow job."

k. July 3, 2018 - Matt Lewis states a female employee representative of Penske has a nice booty, but Plaintiff has a better one and "why don't you (Plaintiff) pull down your pants, man".

l. August 9, 2018 - Matt Lewis advises Plaintiff he has a special assignment for Plaintiff and then asks Plaintiff if his butt puckered up.

m. August 28, 2018 - Bruce Zavotka makes comments in front of Matt Lewis and Jim Lee about Plaintiff "having vagina issues."

n. March 5, 2019 - Don Snyder makes comments to coworkers that Plaintiff uses a dildo.

o. March 7, 2019, November 20, 2019 - Don Snyder refers to a latex condom on Plaintiff's head.

p. March 20, 2019 - Matt Lewis asks Plaintiff, "did you blow that guy?"

IBOLD & O'BRIEN

401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

IBOLD & O'BRIEN
401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

q.   March 26, 2019 - Jim Lee states he's going to light Plaintiff up.  Don Snyder states, "you going to suck his dick" about an outside truck driver.

r.   October 25, 2019 - Bruce Zavotka refers to Plaintiff having a boyfriend.

s.   February 5, 2020 - Don Snyder and Jim Lee discuss Plaintiff being "gay" because he drove a Subaru vehicle.

t.   May 22, 2020 - Don Snyder and Matt Lewis continue to harass Plaintiff and ask him why Plaintiff makes sex noises when putting away inventory.

u.   June 8, 2020 - Matt Lewis talks about getting a Blow Job from Plaintiff and asks Plaintiff what he's going to do about it.

17.   Matt Lewis, Regional Manager, was aware of the conduct creating a hostile work environment for Plaintiff and others, even stating Jim Lee acknowledged he (Jim Lee) creates a hostile work environment on June 20, 2019.  Mr. Lewis failed to take any corrective action to stop it, nor reprimand Jim Lee.

18.   Matt Lewis, Don Snyder and Jim Lee would repeatedly make sexual and hostile remarks in front of other employees.

19.   Plaintiff requested Matt Lewis and Don Snyder to cease making remarks, comments and gestures that were sexual in nature, but they refused.

20.   On October 14, 2017, Plaintiff specifically asked Don Snyder to stop after Mr. Snyder told Plaintiff, "you're doing the hand motion and on your knees."  Mr. Snyder responded, "how have I not talked to you that way" and continued his course of conduct toward Plaintiff.

21.   In April 2019 Jim Lee admitted Plaintiff had been sexually harassed for over a year and a half.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

22. On December 3, 2019, Don Snyder admitted he harassed Plaintiff.

23. On February 5, 2020, Don Snyder admitted he referred to Plaintiff as "gay" in front of Jim Lee, Assistant Manager and manager on site that day, but no action was taken to stop the harassment or to reprimand Mr. Snyder.

24. On July 16, 2020, Matt Lewis, Regional Manager, admitted that Jim Lee and Don Snyder harass the Plaintiff, but he did not take corrective action to cease the harassment, nor did he reprimand said individuals for their harassing actions towards another employee.

25. Plaintiff was witness to harassment towards other employees by Matt Lewis, Don Snyder and Jim Lee.

26. On June 28, 2018, Matt Lewis admitted he had several complaints from coworkers about nicknames, but he did not take action to stop the course of conduct, thereby fostering the inappropriate workplace culture of Defendant.

27. Defendant took no affirmative action regarding the known harassment.

28. The harassment of Plaintiff by the employees, agents and/or representatives of Defendant, as outlined above, was unwelcome, based upon sex and sufficiently severe or pervasive to affect the terms, conditions or privileges of employment, or any matter directly related to employment.

29. The harassment towards Plaintiff by employees, agents or representatives of Defendant, as outlined above, was, at times, committed by a supervisor of the Defendant.

30. Defendant, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

IBOLD & O'BRIEN

401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

6

IBOLD & O'BRIEN
401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

31. The sexual remarks and actions of Defendant's employees promoted a hostile work environment, in violation of ORC 4112.02 and 4112.052 and 42 U.S. Code Sections 2000e-2000e-17 and section 1983.

32. The Defendant's actions created a hostile work environment extremely detrimental to Plaintiff's emotional and physical health and interfered with Plaintiff's work performance.

33. As a direct and proximate result of the actions of Defendant and the Defendant's agents, both in their individual capacity and authorized representatives, supervisors, managers and employees of the Defendant, Plaintiff suffered compensatory damages greater than $25,000, emotional distress, pain and suffering along with other damages the exact amount which will be proven at trial.

34. Defendant's conduct as described herein was willful, wanton and reckless, malicious and/or in complete disregard to the rights of the Plaintiff, and therefore renders the Defendant liable for punitive damages, attorney fees and costs in excess of Twenty-Five Thousand Dollars ($25,000.00), which will be set forth at trial.

## COUNT II
### Age Discrimination

35. Plaintiff incorporates by reference, as if fully rewritten herein, all of the statements in Paragraphs 1 through 35 above.

36. Plaintiff was hired on August 1, 2016, as a Service Advisor and later demoted to Parts Stock Clerk/Penske on June 9, 2017.

37. Plaintiff was 43 years old when he was terminated on or about August 3, 2020.

38. Plaintiff had been employed with Defendant for four (4) years when he was

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

terminated.

39. Plaintiff's demotion and eventual termination occurred against a backdrop of age-based hostility toward him that was exhibited and condoned by the same leaders responsible for Plaintiff's demotion and termination.

40. Matt Lewis made ageist comments to Plaintiff over a course of time, including:

    a. referring to Plaintiff as old

    b. asking why Plaintiff is so old

    c. telling Plaintiff to "get out of here old man"

    d. referring to Plaintiff as old in front of one of Defendant's other service managers

    e. admitting to a service manager that Don Snyder called Plaintiff "old" and gave Plaintiff a complex.

41. Don Snyder continued a course of conduct that included repeated derogatory ageist comments to Plaintiff, including:

    a. referring to Plaintiff as old

    b. stating he would not hire Plaintiff (referring to Plaintiff's age)

    c. stating Plaintiff is old and slow

    d. referring to Plaintiff not being able to lift 75 lbs.

    e. stating Plaintiff is too old for Penske

    f. referring to Plaintiff as an "old man"

    g. discussing Plaintiff's age with the Assistant Manager, Jim Lee

    h. referring to Plaintiff as "old fuck."

42. This action is brought to correct the unlawful employment practices on the basis of

IBOLD & O'BRIEN
401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

**IBOLD & O'BRIEN**

401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

age against Plaintiff by Defendant, amid a workplace culture that encouraged age discrimination, in violation of ORC 4112.02 and 4112.052 and 42 U.S. Code Sections 2000e-2000e-17 and section 1983.

43. Plaintiff complained about the comments and action of these coworkers to his supervisors, but the comments and action continued.

44. As a result of the discrimination the Plaintiff was denied raises; denied opportunities for additional advancement; he was forced to endure exceedingly long probationary periods and otherwise suffered adverse employment actions, including but not limited to his ultimate termination in August 2020.

45. The Defendant's conduct as described herein was willful, wanton and reckless, malicious and/or in complete disregard to the rights of the Plaintiff, and therefore renders the Defendant liable for punitive damages, attorney fees and costs in excess of Twenty-Five Thousand Dollars ($25,000.00), which will be set forth at trial. Plaintiff suffered compensatory damages greater than $25,000, emotional distress, pain and suffering along with other damages the exact amount which will be proven at trial.

<u>**COUNT III**</u>
**Gender Discrimination**

46. Plaintiff incorporates by reference, as if fully rewritten herein, all of the statements in Paragraphs 1 through 47 above.

47. On February 27, 2020, Defendant's assistant manager, Jim Lee, stated to Plaintiff, "first time one female advisor walks through that door, you're gone."

48. Such statement was made in front of Defendant's regional manager, Matt Lewis, and fellow employees, Bruce Zavotka and Don Snyder.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

49. As a result of the discrimination the Plaintiff was denied raises; denied opportunities for additional advancement; he was forced to endure exceedingly long probationary periods and otherwise suffered adverse employment actions, including but not limited to his ultimate termination in August 2020.

50. On numerous occasions Defendant's employees made gender-related remarks in front of and to the Plaintiff in a derogatory fashion without corrective/reprimanding action being taken by Defendant or its representatives, in violation of ORC 4112.02 and 4112.052 and 42 U.S. Code Sections 2000e-2000e-17 and section 1983.

51. The Defendant's conduct as described herein was willful, wanton and reckless, malicious and/or in complete disregard to the rights of the Plaintiff, and therefore renders the Defendant liable for punitive damages, attorney fees and costs in excess of Twenty-Five Thousand Dollars ($25,000.00), which will be set forth at trial. Plaintiff suffered compensatory damages greater than $25,000, emotional distress, pain and suffering along with other damages the exact amount which will be proven at trial.

## COUNT IV
### Racial Discrimination

52. Plaintiff incorporates by reference, as if fully rewritten herein, all of the statements in Paragraphs 1 through 54 above.

53. In 2018 Defendant hired David Bowden for training as a service advisor.

54. Mr. Bowden is an African-American with less experience and younger than Plaintiff.

55. Plaintiff was overlooked for this position due to his race.

56. On March 11, 2020, Defendant's regional manager, Matt Lewis, states, "you know what they call David, Black Wes" and again on March 12, 2020, Mr. Lewis refers to

IBOLD & O'BRIEN

401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

Plaintiff with racial undertones, "who is this guy? is this Black Wes, or is this Wes?"

57.   On numerous occasions Defendant's employees made racial remarks in front of and to the Plaintiff in a derogatory fashion without corrective/reprimanding action being taken by Defendant or its representatives, in violation of ORC 4112.02 and 4112.052 and 42 U.S. Code Sections 2000e-2000e-17 and section 1983.

58.   As a result of the discrimination the Plaintiff was denied raises; denied opportunities for additional advancement; he was forced to endure exceedingly long probationary periods and otherwise suffered adverse employment actions, including but not limited to his ultimate termination in August 2020.

59.   The Defendant's conduct as described herein was willful, wanton and reckless, malicious and/or in complete disregard to the rights of the Plaintiff, and therefore renders the Defendant liable for punitive damages, attorney fees and costs in excess of Twenty-Five Thousand Dollars ($25,000.00), which will be set forth at trial. Plaintiff suffered compensatory damages greater than $25,000, emotional distress, pain and suffering along with other damages the exact amount which will be proven at trial.

## COUNT V
### Retaliation

60.   Plaintiff incorporates by reference, as if fully rewritten herein, all of the statements in Paragraphs 1 through 60 above.

61.   Defendant and its representatives, including Matt Lewis, Don Snyder and Jim Lee, carried on a course of conduct in retaliation against Plaintiff for complaining about the harassment, abuse and assault he received from his coworkers and superiors.

62.   Don Snyder stated he was going to give the Plaintiff a bad review and stated he was

IBOLD & O'BRIEN

401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

going to say bad things about in September 2017 and again in March 2018.

63. Jim Lee stated he was going to "crucify" the Plaintiff in response to complaining about the harassment.

64. On March 19, 2019, Jim Lee spoke about retaliation of Plaintiff.

65. On April 17, 2019, Mr. Lee spoke to a coworker about why he wanted Plaintiff out of there (Defendant's employment).

66. On May 31, 2019, Jim Lee threatened violence against Plaintiff for perceived disrespect.

67. On October 25, 2019, Jim Lee spoke about shooting people and on December 11, 2019, specifically names Plaintiff.

68. On February 18, 2020, another service manager from Cleveland Spring relates to Jim Lee, "I want you to listen to everything he (Plaintiff) says." Then Defendant's assistant manager, Jim Lee, responds, "why do you think I'm up here?", inferring that nothing will be done about the complaints.

69. On June 23, 2020, Don Snyder told the Plaintiff he was going to damage Plaintiff's reputation to other employers.

70. Matt Lewis, Don Snyder and Jim Lewis's retaliatory actions were to make the Plaintiff leave his employment with Defendant, or in the alternative, to create doubt and suspicion about Plaintiff to cause his termination, in violation of ORC 4112.02 and 4112.052 and 42 U.S. Code Sections 2000e-2000e-17 and section 1983.

71. It is unlawful for any person to discriminate, harass or retaliate in any manner against any other person because that person participated in any manner in any investigation, proceeding or hearing under ORC 4112.

IBOLD & O'BRIEN
401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

12

72.    As a result of the retaliation the Plaintiff was denied raises; denied opportunities for additional advancement; he was forced to endure exceedingly long probationary periods and otherwise suffered adverse employment actions, including but not limited to his ultimate termination in August 2020.

73.    Defendant's conduct as described herein was willful, wanton and reckless, malicious and/or in complete disregard to the rights of the Plaintiff, and therefore renders the Defendant liable for punitive damages, attorney fees and costs in excess of Twenty-Five Thousand Dollars ($25,000.00), which will be set forth at trial. Plaintiff suffered compensatory damages greater than $25,000, emotional distress, pain and suffering along with other damages the exact amount which will be proven at trial.

## COUNT VI
### Wrongful Termination in Violation of Public Policy

74.    Plaintiff incorporates by reference, as if fully rewritten herein, all of the statements in Paragraphs 1 through 74 above.

75.    The Ohio Supreme Court has held that an employee may sue the employer for wrongful discharge where the discharge contravenes public policy.

76.    To assert a viable claim for wrongful discharge in violation of public policy, a plaintiff must establish each of the following four elements:

A. That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

B. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).

C. The plaintiff's dismissal was motivated by conduct related to the public

IBOLD & O'BRIEN
401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

IBOLD & O'BRIEN
401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

policy (the *causation* element).

D. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).[1]

77. Allowing the wrongful discharge of Plaintiff under these circumstances would jeopardize these public policies.

78. As set forth herein, Plaintiff's discharge was motivated by his reporting of discrimination and harassment to management, which conduct is related to public policies.

79. Defendant failed to take action, in violation of public policy.

80. Defendant lacked overriding legitimate business justification for this discharge.

81. It is a violation of public policy for an employer to discharge an employee in contravention of State antidiscrimination laws, including workplace sexual harassment[2], age discrimination, gender discrimination and racial discrimination.

82. As a direct and proximate result of Defendant's wrongful discharge of Plaintiff, he suffered damages in excess of Twenty-Five Thousand Dollars ($25,000.00) including, but not limited to, lost wages, lost opportunity for wages, other fringe benefits, emotional and physical distress, and other compensatory damages which will be set forth at trial.

**COUNT VII**
**Intentional Tort - COVID**

83. Plaintiff incorporates by reference, as if fully rewritten herein, all of the statements in Paragraphs 1 through 83 above.

---

[1] *Id* at 69-70.
[2] *Collins v Rizkana* (1995), 73 Ohio St.3d 65, at 73.

IBOLD & O'BRIEN
401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

84. An employer, knowing an injury is substantially certain to occur, is liable for intentional tort pursuant to ORC 2745.01 when the employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition or death during the course of employment.

85. On March 22, 2020, the State of Ohio Department of Health Director issued a stay-at-home order due to the COVID-19 pandemic, which mandated protocols for those businesses deemed essential and to remain open.

86. Due to the pandemic, COVID-19 protocols to remain open and/or reopen businesses were mandated to protect the employees by social distancing the employees from one another, cleaning areas more regularly, use of hand sanitizer, posting signage regarding the COVID-19 protocols and encouraging employees to self-evaluate prior to entering the workplace.

87. Those individuals displaying symptoms of the coronavirus were required to self-quarantine for at least seventy-two (72) hours, later it was updated to fourteen (14) days.

88. Defendant failed to follow the mandated protocols by requiring two (2) infected individuals who were displaying obvious symptoms of COVID 19 to continue to work their shift without wearing any protective gear, thus infecting the Plaintiff and at least one other co-worker.

89. Section 800 of the Truck Service, Inc. Employee Handbook addresses life-threatening illness in the workplace.

90. Section 383 of the Truck Service, Inc. Employee Handbook states that personal protective equipment (PPE) will be provided to employees.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

IBOLD & O'BRIEN

401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

91. Safety policies, procedures and practices that would have safeguarded Plaintiff in the performance of his work were not instituted, followed and/or enforced.

92. Because Defendant exhibited a conscious disregard for COVID-19 protocols mandated by the Governor and Health Director, thereby acting with deliberate intent to cause injury, disease, condition or death to the employees.

93. Defendant's neglect in following COVID-19 protocols mandated by the Governor and Health Director for Defendant's employees' safety demonstrates a conscious disregard for the rights and safety of its workers and had a great probability of causing substantial harm, for which Defendant is liable for punitive damages and attorney fees.

94. As a direct and proximate result of the actions of Defendant and the Defendant's agents, both in their individual capacity and authorized representatives, supervisors, managers and employees of the Defendant, Plaintiff contracted COVID-19 at work and suffered pain and suffering along with other damages in excess of $25,000, the exact amount which will be proven at trial.

95. Defendant's conduct as described herein was willful, wanton and reckless, malicious and/or in complete disregard to the rights of the Plaintiff, and therefore renders the Defendant liable for punitive damages, attorney fees and costs in excess of Twenty-Five Thousand Dollars ($25,000.00), which will be set forth at trial.

## COUNT VIII
### Civil Assault

96. Plaintiff incorporates by reference, as if fully rewritten herein, all of the statements in Paragraphs 1 through 96 above.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

97. "Workplace violence is violent acts, including physical assaults and threats of assault, directed toward persons at work or on duty.  Workplace violence includes:

   a. An intentional attempt or threat to inflict injury on another person,

   b. Coupled with an apparent ability to cause the harm,

   c. Which creates a reasonable apprehension of bodily harm or offensive contact with the victim."

98. As outlined in the preceding paragraphs, Defendant's supervisors, managers and employees carried on a course of assault against the Plaintiff for an extended period of time.

99. Matt Lewis, Don Snyder and Jim Lee additionally carried on a course of conduct that created a hostile work environment without action being taken by Defendant to stop such behavior by the following:

   a. March 29, 2017 - Jim Lee stated he was going to beat Plaintiff's ass because he's sick.

   b. On many occasions Jim Lee threatens the Plaintiff with the use of a baseball bat, "busting his kneecaps," chopping his hand off, knocking Plaintiff out, choking Plaintiff, sticking Plaintiff with a knife, cutting him and Plaintiff's going to get hurt.

   c. On October 25, 2019, Jim Lee spoke about shooting people and on December 11, 2019, specifically names Plaintiff as an intended victim.

   d. On June 1, 2020, Craig Malecki stated he had a 12-gauge in his office and on June 11, 2020, it was "locked and Loaded" and he is "getting it this week."

IBOLD & O'BRIEN
401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

17

IBOLD & O'BRIEN

401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

100. Jim Lee actually admitted threats towards coworkers constituted a hostile work environment on February 8, 2019.

101. Jim Lee made repeated threats of physical violence against the Plaintiff in front of or to management, including Matt Lewis.

102. Matt Lewis, on November 30, 2017, admitted Jim Lee uses threats of violence but did not take action to stop the violence.

103. Matt Lewis further acknowledged that he had to keep Jim Lee from killing Plaintiff.

104. Defendant failed to take appropriate action to protect the Plaintiff in the workplace.

105. Plaintiff feared for his safety.

106. As a direct and proximate result of the actions of Defendant and the Defendant's agents, both in their individual capacity and authorized representatives, supervisors, managers and employees of the Defendant, Plaintiff suffered compensatory damages greater than $25,000, emotional distress, pain and suffering along with other damages the exact amount which will be proven at trial.

107. Defendant's conduct as described herein was willful, wanton and reckless, malicious and/or in complete disregard to the rights of the Plaintiff, and therefore renders the Defendant liable for punitive damages, attorney fees and costs in excess of Twenty-Five Thousand Dollars ($25,000.00), which will be set forth at trial.

## COUNT IX
### Intentional Infliction of Emotional Distress

108. Plaintiff incorporates by reference, as if fully rewritten herein, all of the statements in Paragraphs 1 through 108 above.

109. Defendant knew its actions taken or lack thereof would cause harm to the Plaintiff.

18

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

110. The Defendant's actions were either intended so or extremely reckless and outrageous so as to intentionally cause emotional distress to the Plaintiff.

111. Defendant had a duty to refrain from creating a hostile work environment and a duty to prevent sexual harassment in the workplace.

112. Defendant breached this duty when it allowed and/or created a hostile work environment and permitted the sexual harassment of Plaintiff in the workplace.

113. The mental anguish suffered by Plaintiff is serious and of a nature that no reasonable man could be expected to endure it.

114. Plaintiff's emotional injury was so severe and debilitating such that a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.

115. The mental and emotional injuries sustained by Plaintiff as a result of Defendant's actions were reasonably foreseeable in that the repeated sexual harassment was likely to result in injury to Plaintiff.

116. The Defendant's conduct as described herein was willful, wanton and reckless, malicious and/or in complete disregard to the rights of the Plaintiff, and therefore renders the Defendant liable for punitive damages, attorney fees and costs in excess of Twenty-Five Thousand Dollars ($25,000.00), which will be set forth at trial.

## <u>COUNT X</u>
### Negligent Infliction of Emotional Distress

117. Plaintiff incorporates by reference, as if fully rewritten herein, all of the statements in Paragraphs 1 through 116 above.

118. Plaintiff witnessed and/or experienced a real or impending danger to himself and

IBOLD & O'BRIEN

401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

19

other employees.

119. Defendants conduct negligently caused the danger to Plaintiff and other employees.

120. Defendants conduct was the proximate cause of Plaintiff's serious and reasonably foreseeable emotional distress.

121. Plaintiff's emotional injury was so severe and debilitating such that a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.

122. The mental and emotional injuries sustained by Plaintiff as a result of Defendant's actions were reasonably foreseeable in that the repeated sexual harassment was likely to result in injury to Plaintiff.

123. The Defendant's conduct as described herein was willful, wanton and reckless, malicious and/or in complete disregard to the rights of the Plaintiff, and therefore renders the Defendant liable for punitive damages, attorney fees and costs in excess of Twenty-Five Thousand Dollars ($25,000.00), which will be set forth at trial.

## COUNT XI
### Interference with Business Relationship

124. Plaintiff incorporates by reference, as if fully rewritten herein, all of the statements in Paragraphs 1 through 123 above.

125. Defendant's employee, Don Snyder makes statements that he's "going to say bad things" about Plaintiff, and he (Don Snyder) is going to damage Plaintiff's reputation to other employers.

126. It is believed that the Defendant carried out this interference with future business relationships by providing inaccurate or otherwise false statements about the Plaintiff

IBOLD & O'BRIEN
401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

to potential employers of the Plaintiff.

127. As a direct and proximate result of Defendant's interference with business relationship of Plaintiff, he suffered damages in excess of Twenty-Five Thousand Dollars ($25,000.00) including, but not limited to, lost wages, lost opportunity for wages, other fringe benefits, emotional and physical distress, and other compensatory damages which will be set forth at trial.

## COUNT XII
### Slander Pro se/Per Quod

128. Plaintiff incorporates by reference, as if fully rewritten herein, all of the statements in Paragraphs 1 through 128 above.

129. Not only did Plaintiff's coworkers and supervisors harass him in front of other coworkers, but also in front of customers and suppliers of the business, including representatives of PENSKE.

130. Defendant's employees stated they would retaliate against him in the form of lies and bad reviews in the event he was discharged from the company.

131. These statements constitute Slander per quod in that the Plaintiff was held out to ridicule and suffered damage to his reputation.

132. These statements constitute Slander per se in that the defamatory statements were injurious by their very meaning and were statements that tend to injure the Plaintiff in his trade or occupation.

133. It is believed that multiple opportunities sought by the Plaintiff were impaired by some type of derogatory statement from the Defendant's employees upon being questioned by potential subsequent employers of Plaintiff.

IBOLD & O'BRIEN
401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

IBOLD & O'BRIEN
401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

134. As a direct and proximate result of the actions of Defendant and the Defendant's agents, both in their individual capacity and authorized representatives, supervisors, managers and employees of the Defendant, Plaintiff suffered compensatory damages greater than $25,000, emotional distress, pain and suffering along with other damages the exact amount which will be proven at trial.

## COUNT XIII
### Respondeat Superior

135. Plaintiff incorporates by reference, as if fully rewritten herein, all of the statements in Paragraphs 1 through 134 above.

136. Don Snyder, Bruce Zavotka, Jim Lee and Matt Lewis were employees of Defendant at all times relevant.

137. At all times relevant hereto the actions of Defendant's employees were done in the scope of their employment.

138. Defendant had power and control over its employees' acts.

139. Defendant had the duty to exercise that power and control to prevent injury, harassment, assault and distress to others.

140. Defendant failed to exercise that power and control so as to prevent injury to Plaintiff.

141. Therefore, Defendant is liable for the negligent actions of its employees under the Doctrine of Respondeat Superior.

142. Defendant's conduct as described herein was willful, wanton and reckless, malicious and/or in complete disregard to the rights of the Plaintiff, and therefore renders the Defendant liable for punitive damages, attorney fees and costs in excess of Twenty-Five Thousand Dollars ($25,000.00), which will be set forth at trial.

## COUNT XIV
### Nonpayment of Overtime

143.  Plaintiff incorporates by reference, as if fully rewritten herein, all of the statements in Paragraphs 1 through 143 above.

144.  Pursuant to the Fair Labor Standards Act (FLSA) and Ohio Revised Code Section 4111.03, an employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one work week.

145.  A workweek is considered a fixed and regularly recurring period of seven (7) consecutive 24-hour periods, not necessarily a calendar week. Averaging of hours over two or more weeks is not permitted.

146.  Overtime pay earned must be paid on the regular pay day for the pay period in which the wages were earned.

147.  Over the course of Plaintiff's employment with Defendant, Plaintiff worked over forty (40) hours in a work week, but Defendant did not pay Plaintiff overtime pursuant to FLSA and ORC 4111.03 for those hours worked in excess of forty (40) hours.

148.  The amount of damages is greater than Twenty-Five Thousand Dollars ($25,000.00), the exact amount which will be proven at trial, including liquidated damages, attorney fees and costs.

## COUNT XV
### Breach of Employment Contract

149.  Plaintiff incorporates by reference, as if fully rewritten herein, all of the statements in Paragraphs 1 through 148 above.

IBOLD & O'BRIEN
401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

150.   In 2016, the Defendant made an offer of employment to the Plaintiff, which was accepted and the Plaintiff was paid compensation for his services.

151.   The Defendant's Employment Handbook, Section 101, states that the handbook is not intended to create a contract, nor are the policies set forth therein to be construed to constitute contractual obligations of any kind or contract of employment between Truck Service, Inc. and any of its employees, and that Truck Service, Inc. may terminate the employment relationship of any employee at any time, "so long as such termination is not in violation of applicable federal or state law."  See Exhibit "B" attached.

152.   The general statement of policy as set forth in Section 101 of the Truck Service, Inc. Employee Handbook, (i.e. the lack of intent to create an employment contract) is not specific enough to prevent the legal determination of an employee contract as specific information and procedures stated therein created certain definite rules which employees could comprehend and take advantage of.

153.   Section 103 states that no retaliation will be taken by anyone by anyone for bringing claims of harassment to the attention of management and, "anyone found to be engaging in this type of unlawful retaliatory discrimination will be subject to disciplinary action up to and including termination of employment".

154.   Section 104 of the Truck Service, Inc. Employee Handbook states, "Business ethics and conduct states that compliance with this policy is a responsibility of every Truck Service, Inc. employee."

IBOLD & O'BRIEN
401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

155. Section 181 of the Truck Service, Inc. Employee Handbook states, "Under no circumstances will you, the employee, be penalized for presenting your complaint to your supervisor or other members of management."

156. Section 507 of the Truck Service, Inc. Employee Handbook addresses overtime applicable to all employees in accordance with federal and state wage and hour restrictions.

157. Section 522 of the Truck Service, Inc. Employee Handbook speaks to workplace violence preventions, which indicates, "will be subject to prompt disciplinary action."

158. Section 703 of the Truck Service, Inc. Employee Handbook addresses sexual and other unlawful harassment and states that, "harassment will not be tolerated" requires the employee to, "report it immediately to your supervisor" and that allegations, "will be quickly and discretely investigated" and that any supervisor or manager that becomes aware of any unlawful harassment, "must immediately advise the president or any member of management so that it can be investigated in a timely and confidential manner. Anyone engaging in sexual or other unlawful harassment will be subject to disciplinary action..."

159. As the terms of the Truck Service, Inc. Employee Handbook specifically deal with absolute situations (see the use of terms such as "will" and "shall"), neither the Defendant nor the Plaintiff are bound by the more general statement of policy that the handbook is not intended to be an employment contract.

160. The employment contract was breached, as it is a violation of public policy for an employer to discharge an employee in contravention of State antidiscrimination laws,

IBOLD & O'BRIEN
401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

including workplace sexual harassment[3], age discrimination, gender discrimination and racial discrimination.

161. Defendant's conduct as described herein was willful, wanton and reckless, malicious and/or in complete disregard to the rights of the Plaintiff, and therefore renders the Defendant liable for punitive damages, attorney fees and costs in excess of Twenty-Five Thousand Dollars ($25,000.00), which will be set forth at trial.

## COUNT XVI
### Punitive Damages

162. Plaintiff incorporates by reference, as if fully rewritten herein, all of the statements in Paragraphs 1 through _____ above.

163. The actions of Defendant and Defendant's employees were knowing, reckless and/or with actual malice towards Plaintiff and allow the recovery of punitive damages.

*WHEREFORE*, Plaintiff, Wesley Redding, prays for judgment against Truck Service Inc.:

A. Compensatory damages in an amount greater than Twenty-Five Thousand Dollars ($25,000.00), the exact amount to be proven at trial;

B. Punitive damages in an amount greater than Twenty-Five Thousand Dollars ($25,000.00), the exact amount to be proven at trial;

C. Interest at the statutory rate;

D. Costs of this litigation;

---

[3] *Collins v Rizkana* (1995), 73 Ohio St.3d 65, at 73.

IBOLD & O'BRIEN
401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

E.  Attorney fees; and

F.  Whatever other relief this Court deems just and equitable.

_____
CASEY P. O'BRIEN  [#0072378]
IBOLD & O'BRIEN
401 South Street
Chardon, OH 44024
Phone:  (440) 285-3511
Fax:  (440) 285-3363
casey@iboldobrien.com
Attorney for Plaintiff

## **JURY DEMAND**

The plaintiff hereby demands a trial by the maximum number of jurors permitted by law in the above captioned matter.

_____
CASEY P. O'BRIEN  [#0072378]
IBOLD & O'BRIEN
Attorney for Plaintiff

IBOLD & O'BRIEN
401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Cleveland Field Office
Anthony J. Celebrezze Federal Building
1240 E 9th St., Suite 3001
Cleveland, OH 44199
(216) 306-1 120 Phone
(216) 522-7395 Fax
Website: www.eeoc.gov

## <u>DETERMINATION AND NOTICE OF RIGHTS</u>
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 03/31/2022

**To:** Wesley J. Redding
338 Irma Dr
Chardon, OH 44024

Charge No: 532-2020-02446 Wesley J. Redding vs. Truck Service, Inc.

EEOC Representative:        Legal Unit (267) 589-9707

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

Equal Pay Act (EPA): EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 532-2020-02446.

Confirmation Nbr. 2581354 / CLLMD

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 /


PLAINTIFF'S
EXHIBIT
tabbies
A

On behalf of the Commission,

Digitally Signed By: Karen McDonough
03/31/2022

Karen McDonough
Acting Cleveland Field Office Director

**CC:**
Keith D Thomas
Cincinnati Insurance Co.
Keith_Thomas@staffdefense.com

Dennis Meyer
TRUCK SERVICE, INC.
dmeyer@trksvc.com

Casey P O'Brien
Ibold & O'Brien
Casey@peteribold.com

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you** *receive* **this Notice.** Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice.** Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 532-2020-02446 to the District Director at Jamie Williamson, 801 Market St Suite 1000

Philadelphia, PA 19107.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

# *Truck Service, Inc.*
## 2012

### Table of Contents

| **No.** | **Policy** | **Page** |
|---|---|---|
| | INTRODUCTION | |
| 020 | Employee Welcome Message | |
| 030 | Organization Description | |
| 040 | Introductory Statement | |
| 051 | Employee Acknowledgement Form | |
| 060 | Customer Relations | |
| | EMPLOYMENT | |
| 101 | Nature of Employment | 1 |
| 103 | Equal Employment Opportunity | 2 |
| 104 | Business Ethics and Conduct | 3 |
| 105 | Personal Relationships in the Workplace | 4 |
| 107 | Immigration Law Compliance | 5 |
| 108 | Conflicts of Interest | 6 |
| 110 | Outside Employment | 7 |
| 112 | Non-Disclosure | 8 |
| 114 | Disability Accommodation | 9 |
| 181 | Employee Communications | 10 |
| 182 | Break In Service | 11 |
| | EMPLOYMENT STATUS & RECORDS | |
| 201 | Employment Categories | 12 |
| 202 | Access to Personnel Files | 14 |
| 203 | Employment Reference Checks | 15 |
| 204 | Personnel Data Changes | 16 |
| 205 | Introductory   Employment Period | 17 |
| 208 | Employment Applications | 18 |
| 209 | Performance Evaluation | 19 |
| | EMPLOYEE BENEFIT PROGRAMS | |
| 301 | Employee Benefits | 20 |
| 303 | Vacation Benefits | 21 |
| 305 | Holidays | 23 |
| 306 | Workers' Compensation Insurance | 25 |
| 307 | Personal Leave Benefits | 26 |
| 309 | Bereavement Leave | 28 |


PLAINTIFF'S
EXHIBIT
B


Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

# *Truck Service, Inc.*
## 2012

| | | |
|---|---|---|
| 311 | Jury Duty | 29 |
| 313 | Benefits Continuation (COBRA) | 30 |
| 316 | Health Insurance | 31 |
| 317 | Life Insurance | 32 |
| 318 | Short-Term Disability | 33 |
| 320 | 401(k) Savings Plan | 34 |
| 324 | Employee Assistance Program | 35 |
| 380 | Training | 36 |
| 381 | ASE Tests | 38 |
| 382 | Performance Incentive Pay Program | 39 |
| 383 | Personal Protective Equipment (PPE) | 40 |
| 384 | Employee Tools | 41 |
| 385 | Employee Purchases | 42 |

**TIMEKEEPING/PAYROLL**

| | | |
|---|---|---|
| 401 | Timekeeping | 43 |
| 403 | Paydays | 44 |
| 405 | Employment Termination | 45 |
| 409 | Administrative Pay Corrections | 46 |
| 410 | Pay Deductions and Setoffs | 47 |

**WORK CONDITIONS & HOURS**

| | | |
|---|---|---|
| 501 | Safety | 48 |
| 502 | Work Schedules | 49 |
| 504 | Use of Phone Systems | 50 |
| 505 | Smoking | 51 |
| 506 | Rest and Meal Periods | 52 |
| 507 | Overtime | 53 |
| 508 | Use of Equipment and Vehicles | 54 |
| 510 | Emergency Closings | 55 |
| 512 | Business Travel Expenses | 56 |
| 514 | Visitors in the Workplace | 58 |
| 516 | Computer and Email Usage | 59 |
| 517 | Internet Usage | 60 |
| 518 | Workplace Monitoring | 62 |
| 522 | Workplace Violence Prevention | 63 |
| 526 | Cell Phone Usage | 65 |

**LEAVES OF ABSENCE**

| | | |
|---|---|---|
| 601 | Medical Leave | 66 |

# *Truck Service, Inc.*
## 2012

| | | |
|---|---|---|
| 602 | Family Leave | 68 |
| 603 | Personal Leave | 70 |
| 605 | Military Leave | 72 |
| 607 | Pregnancy-Related Absences | 73 |

**EMPLOYEE CONDUCT & DISCIPLINARY ACTION**

| | | |
|---|---|---|
| 701 | Employee Conduct and Work Rules | 74 |
| 702 | Drug and Alcohol Use | 75 |
| 703 | Sexual and Other Unlawful Harassment | 77 |
| 704 | Attendance and Punctuality | 79 |
| 705 | Personal Appearance | 80 |
| 706 | Return of Property | 81 |
| 708 | Resignation | 82 |
| 710 | Security Inspections | 83 |
| 714 | Drug Testing | 84 |
| 716 | Progressive Discipline | 85 |
| 722 | Workplace Etiquette | 87 |

**MISCELLANEOUS**

| | | |
|---|---|---|
| 800 | Life-Threatening Illnesses in the Workplace | 88 |

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
**2012**

Welcome to Truck Service, Inc. (TSI) !

On behalf of the TSI team, we welcome you to our company. It is our goal to provide you with a challenging and rewarding vocational home.

Our company is not unique in the products we sell or the service we provide. In each of our cities, there are competitors who are doing the same work. Therefore, each of our customers has a choice as to who performs their work. The only way to differ from our competitors is in how we treat each customer. If we serve them in a professional, friendly manner and provide quality work at competitive prices, they will return. If we treat them with indifference and are careless with our work, they will not. It's that simple.

We operate our company with these goals in mind:

1)  To be the best place for our customers to bring their vehicles for repair.

2)  To be an outstanding place to work.

3)  To grow and provide opportunities for each employee.

4)  To have fun.

When we serve our customers with respect, honesty and integrity we will grow and prosper, provide opportunities for all and have fun in the process.  Welcome to the team. We need your help !

Sincerely,

Darrell Fife                    Don Jones                    Dennis Meyer

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
**2012**

TSI is primarily engaged in the business of providing repair services for light, medium, heavy duty trucks, buses and RV's. TSI specializes in air conditioning, alignment, brakes, lubrication systems, and suspension repair service.

TSI employs approximately 60 people in six service locations and it's corporate office as listed below:

Cleveland, OH   - Cleveland Spring
Indianapolis, IN - Indianapolis Spring
Indianapolis, IN - Warner Spring
Indianapolis, IN - Corporate Headquarters
Jacksonville, Fl - Horton Truck Service
Noblesville, IN  - Truck Service Noblesville
Valley View, OH - EAB Truck Service

TSI traces it's origin to Cleveland Spring and EAB, two Cleveland based heavy duty truck service businesses founded in the 1930's. These entities became part of an automotive and heavy duty parts and service company in 1973. During the next several years the company grew by acquiring similar businesses in Jacksonville, FL and Indianapolis, IN   Truck Service, Inc. (TSI) was formed in September 1995 and subsequently purchased the Cleveland, Indianapolis and Jacksonville locations. TSI acquired the Noblesville and Warner Spring locations in February 2008.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
**2012**

## INTRODUCTORY STATEMENT

This handbook is designed to acquaint you with TSI and provide you with information about working conditions, employee benefits, and some of the policies affecting your employment. You should read, understand, and comply with all provisions of the handbook. It describes many of your responsibilities as an employee and outlines the programs developed by TSI to benefit employees. One of our objectives is to provide a work environment that is conducive to both personal and professional growth.

No employee handbook can anticipate every circumstance or question about policy. As TSI continues to grow, the need may arise and TSI reserves the right to revise, supplement, or rescind any policies or portion of the handbook from time to time as it deems appropriate, in its sole and absolute discretion. Employees will, of course, be notified of such changes to the handbook as they occur.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
## 2012

### CUSTOMER RELATIONS

Customers are among our organization's most valuable assets. Every employee represents TSI to our customers and the public. The way we do our jobs presents an image of our entire organization. Customers judge all of us by how they are treated with each employee contact. Therefore, one of our first business priorities is to assist any customer or potential customer. Nothing is more important than being courteous, friendly, helpful, and prompt in the attention you give to customers.

Customers who wish to lodge specific comments or complaints should be directed to TSI management for appropriate action. Our personal contact with the public, our manners on the telephone, and the communications we send to customers are a reflection not only of ourselves, but also of the professionalism of TSI. Positive customer relations not only enhance the public's perception of TSI, but also pay off in greater customer loyalty.



# *Truck Service, Inc.*
## 2012

## **101** Nature of Employment
Effective Date: 1/1/2013
Revision Date:

Employment with TSI is voluntarily entered into, and the employee is free to resign at will at any time, with or without cause. Similarly, TSI may terminate the employment relationship at will at any time, with or without notice or cause, so long as such termination is not in violation of applicable federal or state law.

Policies set forth in this handbook are not intended to create a contract, nor are they to be construed to constitute contractual obligations of any kind or a contract of employment between TSI and any of its employees. The provisions of the handbook have been developed at the discretion of management and, except for its policy of employment-at-will, may be amended or cancelled at any time, at TSI's sole discretion.

These provisions supersede all existing policies and practices and may not be amended or added to without the express written approval of the chief executive officer of TSI.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## 103 Equal Employment Opportunity
Effective Date: 1/1/2013
Revision Date:

In order to provide equal employment and advancement opportunities to all individuals, employment decisions at TSI will be based on merit, qualifications, and abilities. TSI does not discriminate in employment opportunities or practices on the basis of race, color, religion, sex, national origin, age, disability, or any other characteristic protected by law.

TSI will make reasonable accommodations for qualified individuals with known disabilities unless doing so would result in an undue hardship. This policy governs all aspects of employment, including selection, job assignment, compensation, discipline, termination, and access to benefits and training.

In addition to a commitment to provide equal employment opportunities to all qualified individuals, TSI has established an affirmative action program to promote opportunities for individuals in certain protected classes throughout the organization.

Any employees with questions or concerns about any type of discrimination in the workplace are encouraged to bring these issues to the attention of their immediate supervisor or the President. Employees can raise concerns and make reports without fear of reprisal. Anyone found to be engaging in any type of unlawful discrimination will be subject to disciplinary action, up to and including termination of employment.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

### 104 Business Ethics and Conduct
**Effective Date: 1/1/2013**
**Revision Date:**

The successful business operation and reputation of TSI is built upon the principles of fair dealing and ethical conduct of our employees. Our reputation for integrity and excellence requires careful observance of the spirit and letter of all applicable laws and regulations, as well as a consistent regard for the highest standards of conduct and personal integrity.

The continued success of TSI is dependent upon our customers' trust and we are dedicated to preserving that trust. Employees owe a duty to TSI, its customers, and shareholders to act in a way that will merit the continued trust and confidence of the public.

TSI will comply with all applicable laws and regulations and expects its directors, officers, and employees to conduct business in accordance with the letter, spirit, and intent of all relevant laws and to refrain from any illegal, dishonest, or unethical conduct.

In general, the use of good judgment, based on high ethical principles, will guide you with respect to lines of acceptable conduct. If a situation arises where it is difficult to determine the proper course of action, the matter should be discussed openly with your immediate supervisor and, if necessary, with the President for advice and consultation.

Compliance with this policy of business ethics and conduct is the responsibility of every TSI employee. Disregarding or failing to comply with this standard of business ethics and conduct could lead to disciplinary action, up to and including possible termination of employment.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## **105** Personal Relationships in the Workplace

Effective Date: 1/1/2013
Revision Date:

The employment of relatives or individuals involved in a dating relationship in the same area of an organization may cause serious conflicts and problems with favoritism and employee morale. In addition to claims of partiality in treatment at work, personal conflicts from outside the work environment can be carried over into day-to-day working relationships.

For purposes of this policy, a relative is any person who is related by blood or marriage, or whose relationship with the employee is similar to that of persons who are related by blood or marriage.

Relatives of current employees may not occupy a position that will be working directly for or supervising their relative. Individuals involved in a dating relationship with a current employee may also not occupy a position that will be working directly for or supervising the employee with whom they are involved in a dating relationship. TSI also reserves the right to take prompt action if an actual or potential conflict of interest arises involving relatives or individuals involved in a dating relationship who occupy positions at any level (higher or lower) in the same line of authority that may affect the review of employment decisions.

If a relative relationship or dating relationship is established after employment between employees who are in a reporting situation described above, it is the responsibility and obligation of the supervisor involved in the relationship to disclose the existence of the relationship to management. The individuals concerned will be given the opportunity to decide who is to be transferred to another available position. If that decision is not made within 30 calendar days, management will decide who is to be transferred or, if necessary, terminated from employment.

In other cases where a conflict or the potential for conflict arises because of the relationship between employees, even if there is no line of authority or reporting involved, the employees may be separated by reassignment or terminated from employment.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## 107 Immigration Law Compliance
Effective Date: 1/1/2013
Revision Date:

TSI is committed to employing only United States citizens and aliens who are authorized to work in the United States and does not unlawfully discriminate on the basis of citizenship or national origin.

In compliance with the Immigration Reform and Control Act of 1986, each new employee, as a condition of employment, must complete the Employment Eligibility Verification Form I-9 and present documentation establishing identity and employment eligibility. Former employees who are re hired must also complete the form if they have not completed an I-9 with TSI within the past three years, or if their previous I-9 is no longer retained or valid.

Employees with questions or seeking more information on immigration law issues are encouraged to contact the TSI management. Employees may raise questions or complaints about immigration law compliance without fear of reprisal.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

### 108 Conflicts of Interest
Effective Date: 1/1/2013
Revision Date:

Employees have an obligation to conduct business within guidelines that prohibit actual or potential conflicts of interest. This policy establishes only the framework within which TSI wishes the business to operate. The purpose of these guidelines is to provide general direction so that employees can seek further clarification on issues related to the subject of acceptable standards of operation. Contact the TSI management for more information or questions about conflicts of interest.

Transactions with outside firms must be conducted within a framework established and controlled by the executive level of TSI. Business dealings with outside firms should not result in unusual gains for those firms. Unusual gain refers to bribes, product bonuses, special fringe benefits, unusual price breaks, and other windfalls designed to ultimately benefit either the employer, the employee, or both. Promotional plans that could be interpreted to involve unusual gain require specific executive-level approval.

An actual or potential conflict of interest occurs when an employee is in a position to influence a decision that may result in a personal gain for that employee or for a relative as a result of TSI's business dealings. For the purposes of this policy, a relative is any person who is related by blood or marriage, or whose relationship with the employee is similar to that of persons who are related by blood or marriage.

No "presumption of guilt" is created by the mere existence of a relationship with outside firms. However, if employees have any influence on transactions involving purchases, contracts, or leases, it is imperative that they disclose to an officer of TSI as soon as possible the existence of any actual or potential conflict of interest so that safeguards can be established to protect all parties.

Personal gain may result not only in cases where an employee or relative has a significant ownership in a firm with which TSI does business, but also when an employee or relative receives any kickback, bribe, substantial gift, or special consideration as a result of any transaction or business dealings involving TSI.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## **110** Outside Employment
Effective Date: 1/1/2013
Revision Date:

Employees may hold outside jobs as long as they meet the performance standards of their job with TSI. All employees will be judged by the same performance standards and will be subject to TSI's scheduling demands, regardless of any existing outside work requirements.

If TSI determines that an employee's outside work interferes with performance or the ability to meet the requirements of TSI as they are modified from time to time, the employee may be asked to terminate the outside employment if he or she wishes to remain with TSI.

Outside employment that constitutes a conflict of interest is prohibited. Employees may not receive any income or material gain from individuals outside TSI for materials produced or services rendered while performing their jobs.

Employees may not perform or solicit business during their non working hours that is in competition with TSI's normal course of business. Normal course of business for purposes of this policy is defined as : parts and or service offered by TSI to the general public.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## 112 Non-Disclosure
Effective Date: 1/1/2013
Revision Date:

The protection of confidential business information and trade secrets is vital to the interests and the success of TSI. Such confidential information includes, but is not limited to, the following examples:

* computer processes
* computer programs and codes
* customer lists
* customer preferences
* financial information
* pending projects and proposals
* cost and pricing data
* technological data

Employees who are exposed to confidential information may be required to sign a non-disclosure agreement as a condition of employment. Employees who improperly use or disclose trade secrets or confidential business information will be subject to disciplinary action, up to and including termination of employment and legal action, even if they do not actually benefit from the disclosed information.

Electronically Filed 06/21/2022 13:37 / / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## 114 Disability Accommodation
**Effective Date:** 1/1/2013
**Revision Date:**

TSI is committed to complying fully with the Americans with Disabilities Act (ADA) and ensuring equal opportunity in employment for qualified persons with disabilities. All employment practices and activities are conducted on a non-discriminatory basis.

Hiring procedures have been reviewed and provide persons with disabilities meaningful employment opportunities. Pre-employment inquiries are made only regarding an applicant's ability to perform the duties of the position.

Reasonable accommodation is available to all disabled employees where their disability affects the performance of job functions. All employment decisions are based on the merits of the situation in accordance with defined criteria, not the disability of the individual.

Qualified individuals with disabilities are entitled to equal pay and other forms of compensation (or changes in compensation) as well as in job assignments, classifications, organizational structures, position descriptions, lines of progression, and seniority lists. Leave of all types will be available to all employees on an equal basis.

TSI is also committed to not discriminating against any qualified employees or applicants because they are related to or associated with a person with a disability. TSI will follow any state or local law that provides individuals with disabilities greater protection than the ADA.

This policy is neither exhaustive nor exclusive. TSI is committed to taking all other actions necessary to ensure equal employment opportunity for persons with disabilities in accordance with the ADA and all other applicable federal, state, and local laws.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
**2012**

## 181 Employee Communications
Effective Date: 1/1/2013
Revision Date:

TSI recognizes the meaningful value and importance of full discussion in resolving misunderstandings and preserving good relations between management and employees. We, therefore, encourage you to present your questions or concerns pertaining to company policies and other areas of mutual interest and to feel free to talk with your immediate supervisor or other management personnel. TSI management operates with an Open Door Policy for any employee who has a concern which needs to be addressed.

If you have a complaint, discuss it with your service manager as soon as possible, but at least within three days of the event occurring.

In the event you are unable to come to a mutual understanding and resolution, you may then approach the President or Vice President of TSI to discuss the problem.

This Open Door Policy, providing for a review by management, is a safeguard against possible inequitable treatment. You may therefore be assured that every effort will be made to resolve problems to your satisfaction.

Under no circumstances will you be penalized for presenting your complaint to your supervisor or other members of management.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

**182** Break In Service
Effective Date: 1/1/2013
Revision Date:

When a previously employed person rejoins TSI after a voluntary termination period of less than 90 days, all length-of-service based benefits are calculated from the original date of employment with TSI.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## **201** Employment Categories
Effective Date: 1/1/2013
Revision Date:

It is the intent of TSI to clarify the definitions of employment classifications so that employees understand their employment status and benefit eligibility. These classifications do not guarantee employment for any specified period of time. Accordingly, the right to terminate the employment relationship at will at any time is retained by both the employee and TSI.

Each employee is designated as either NONEXEMPT or EXEMPT from federal and state wage and hour laws. NONEXEMPT employees are entitled to overtime pay under the specific provisions of federal and state laws. EXEMPT employees are excluded from specific provisions of federal and state wage and hour laws. An employee's EXEMPT or NONEXEMPT classification may be changed only upon written notification by TSI management.

In addition to the above categories, each employee will belong to one other employment category:

REGULAR FULL-TIME employees are those who are not in a temporary or introductory status and who are regularly scheduled to work TSI's full-time schedule. Generally, they are eligible for TSI's benefit package, subject to the terms, conditions, and limitations of each benefit program.

REGULAR PART-TIME employees are those who are not assigned to a temporary or introductory status and who are regularly scheduled to work less than the full-time work schedule, but at least 20 hours per week. Regular part-time employees are eligible for some benefits sponsored by TSI, subject to the terms, conditions, and limitations of each benefit program.

PART-TIME employees are those who are not assigned to a temporary or introductory status and who are regularly scheduled to work less than 20 hours per week. While they do receive all legally mandated benefits (such as Social Security and workers' compensation insurance), they are ineligible for all of TSI's other benefit programs.

INTRODUCTORY employees are those whose performance is being evaluated to determine whether further employment in a specific position or with TSI is appropriate. Employees who satisfactorily complete the introductory period will be notified of their new employment classification.

TEMPORARY employees are those who are hired as interim replacements to temporarily supplement the

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

# *Truck Service, Inc.*

## 2012

work force, or to assist in the completion of a specific project. Employment assignments in this category are of a limited duration. Employment beyond any initially stated period does not in any way imply a change in employment status. Temporary employees retain that status unless and until notified of a change. While temporary employees receive all legally mandated benefits (such as workers' compensation insurance and Social Security), they are ineligible for all of TSI's other benefit programs.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## 202 Access to Personnel Files
Effective Date: 1/1/2013
Revision Date:

TSI maintains a personnel file on each employee. The personnel file includes such information as the employee's job application, resume, records of training, documentation of performance appraisals and salary increases, and other employment records.

Personnel files are the property of TSI, and access to the information they contain is restricted. Generally, only supervisors and management personnel of TSI who have a legitimate reason to review information in a file are allowed to do so.

Employees who wish to review their own file should contact the President or Vice President. With reasonable advance notice, employees may review their own personnel files in TSI's offices and in the presence of an individual appointed by TSI to maintain the files.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
**2012**

## **203** Employment Reference Checks
Effective Date: 1/1/2013
Revision Date:

To ensure that individuals who join TSI are well qualified and have a strong potential to be productive and successful, it is the policy of TSI to check the employment references of all applicants.

TSI will respond to all reference check inquiries from other employers. Responses to such inquiries will confirm only dates of employment, wage rates, and position(s) held. No employment data will be released without a written authorization and release signed by the individual who is the subject of the inquiry.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
**2012**

## 204 Personnel Data Changes
**Effective Date: 1/1/2013**
**Revision Date:**

It is the responsibility of each employee to promptly notify TSI of any changes in personnel data. Personal mailing addresses, telephone numbers, number and names of dependents, individuals to be contacted in the event of an emergency, educational accomplishments, and other such status reports should be accurate and current at all times. If any personnel data has changed, notify the Vice President.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## **205** Introductory  Employment Period

Effective Date: 1/1/2013
Revision Date:

The introductory period is intended to give new employees the opportunity to demonstrate their ability to achieve a satisfactory level of performance and to determine whether the new position meets their expectations. TSI uses this period to evaluate employee capabilities, work habits, and overall performance. Either the employee or TSI may end the employment relationship at will at any time during or after the introductory period, with or without cause or advance notice.

All new and re hired employees work on an introductory basis for the first 90 calendar days after their date of hire. Any significant absence will automatically extend an introductory period by the length of the absence. If TSI determines that the designated introductory period does not allow sufficient time to thoroughly evaluate the employee's performance, the introductory period may be extended for a specified period.

Upon satisfactory completion of the introductory period, employees enter the regular employment classification.

During the introductory period, new employees are eligible for those benefits that are required by law, such as workers' compensation insurance and Social Security. After becoming regular employees, they may also be eligible for other TSI-provided benefits, subject to the terms and conditions of each benefits program. Employees should read the information for each specific benefits program for the details on eligibility requirements.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

*Truck Service, Inc.*
2012

### 208 Employment Applications
Effective Date: 1/1/2013
Revision Date:

TSI relies upon the accuracy of information contained in the employment application, as well as the accuracy of other data presented throughout the hiring process and employment. Any misrepresentations, falsification, or material omissions in any of this information or data may result in the exclusion of the individual from further consideration for employment or, if the person has been hired, termination of employment.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

**209** Performance Evaluation
Effective Date: 1/1/2013
Revision Date:

Supervisors and employees are strongly encouraged to discuss job performance and goals on an informal, day-to-day basis. A formal written performance evaluation will be conducted at the end of an employee's initial period of hire, known as the introductory period. Additional formal performance evaluations are conducted to provide both supervisors and employees the opportunity to discuss job tasks, identify and correct weaknesses, encourage and recognize strengths, and discuss positive, purposeful approaches for meeting goals.

Performance evaluations are scheduled approximately every 12 months, coinciding generally with the anniversary of the employee's original date of hire.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## **301** Employee Benefits
Effective Date: 1/1/2013
Revision Date:

Eligible employees at TSI are provided a wide range of benefits. A number of the programs (such as Social Security, workers' compensation, state disability, and unemployment insurance) cover all employees in the manner prescribed by law.

Benefits eligibility is dependent upon a variety of factors, including employee classification. Your supervisor can identify the programs for which you are eligible. Details of many of these programs can be found elsewhere in the employee handbook.

The following benefit programs are available to eligible employees:

* 401(k) Savings Plan
* Business Expense Reimbursement
* Bereavement Leave
* Dental Insurance
* Drug or Alcohol Rehabilitation Program
* Employee Assistance Program
* Employee Discounts
* Employee Health Program
* Health Insurance
* Holidays
* Jury Duty Leave
* Life Insurance
* Short-Term Disability
* Supplemental Life Insurance
* Supplemental Medical Coverage
* Uniform and Uniform Maintenance
* Vacation Benefits
* Vision Care Insurance

Some benefit programs require contributions from the employee, but most are fully paid by TSI.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# Truck Service, Inc.
2012

### 303 Vacation Benefits
Effective Date: 1/1/2013
Revision Date:

Vacation time off with pay is available to eligible employees to provide opportunities for rest, relaxation, and personal pursuits. Employees in the following employment classification(s) are eligible to earn and use vacation time as described in this policy:

* Regular full-time employees
* Regular part-time employees

The amount of paid vacation time employees receive each year increases with the length of their employment as shown in the following schedule:

*Upon initial eligibility the employee is entitled to 0 vacation days each year.

*After 1 year of eligible service the employee is entitled to 5 vacation days each year.

*After 2 years of eligible service the employee is entitled to 10 vacation days each year.

*After 8 years of eligible service the employee is entitled to 15 vacation days each year.

*After 20 years of eligible service the employee is entitled to 20 vacation days each year.

The length of eligible service is calculated on the basis of a "benefit year." This is the 12-month period that begins when the employee starts to earn vacation time. An employee's benefit year may be extended for any significant leave of absence except military leave of absence. Military leave has no effect on this calculation. (See individual leave of absence policies for more information.) The first week of vacation is earned on the one year anniversary of the employee's hire date and must be taken prior to the end of that calendar year. Additional weeks per the above schedule are earned on the anniversary of the employee's hire date and must be taken prior to the end of that calendar year.

Once employees enter an eligible employment classification, they begin to earn paid vacation time according to the schedule. Earned vacation time is available for use in the year following its accrual.

Paid vacation time can be used in minimum increments of one-half day. To take vacation, employees

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
**2012**

should request advance approval from their supervisors. Requests will be honored based on a number of factors, including business needs, seniority and staffing requirements.

Vacation time off is paid at the employee's base pay rate at the time of vacation. It does not include overtime or any special forms of compensation such as incentives, commissions, bonuses, or shift differential.

As stated above, employees are encouraged to use available paid vacation time for rest, relaxation, and personal pursuits. In the event that available vacation is not used by the end of the benefit year, employees will forfeit the unused time.

Upon voluntary termination of employment with at least two weeks notice, employees will be paid for unused vacation time that is eligible to be taken as of the last day of work. In the event of involuntary termination with cause or voluntary termination with less than two weeks notice all unused vacation time eligible to be taken will be forfeited.

Vacation time is considered worked hours for purposes of determining overtime compensation.

Any vacation time which has been paid in excess of that which is eligible for use will be deducted from a terminated employee's final pay check.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## **305** Holidays
Effective Date: 1/1/2013
Revision Date:

TSI will grant holiday time off to all employees on the holidays listed below:

  * New Year's Day (January 1)
  * Memorial Day (last Monday in May)
  * Independence Day (July 4)
  * Labor Day (first Monday in September)
  * Thanksgiving (fourth Thursday in November)
  * Day after Thanksgiving (TSI is closed - holiday is unpaid)
  * Christmas Eve (December 24)
  * Christmas (December 25)

TSI will grant paid holiday time off to all eligible employees who have completed 90 calendar days of service in an eligible employment classification. Holiday pay will be calculated based on the employee's straight-time pay rate (as of the date of the holiday) times the number of hours the employee would otherwise have worked on that day. Eligible employee classification(s):  .

  * Regular full-time employees
  * Regular part-time employees

To be eligible for holiday pay, employees must work the last scheduled day immediately preceding and the first scheduled day immediately following the holiday, unless the employee is not working due to a previously scheduled and approved time off.

A recognized holiday that falls on a Saturday will be observed on the preceding Friday. A recognized holiday that falls on a Sunday will be observed on the following Monday.

If a recognized holiday falls during an eligible employee's paid absence (such as vacation or sick leave), holiday pay will be provided instead of the paid time off benefit that would otherwise have applied.

If eligible nonexempt employees work on a recognized holiday, they will receive holiday pay plus wages at their straight-time rate for the hours worked on the holiday.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

# *Truck Service, Inc.*
## 2012

Paid time off for holidays will be counted as hours worked for the purposes of determining whether overtime pay is owed.

TSI reserves the right to suspend holiday pay benefits when (at it's sole discretion) business conditions warrant a suspension.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
**2012**

## 306 Workers' Compensation Insurance
Effective Date: 1/1/2013
Revision Date:

TSI provides a comprehensive workers' compensation insurance program at no cost to employees. This program covers any injury or illness sustained in the course of employment that requires medical, surgical, or hospital treatment. Subject to applicable legal requirements, workers' compensation insurance provides loss of pay benefits after a short waiting period or, if the employee is hospitalized, immediately.

Employees who sustain work-related injuries or illnesses should inform their supervisor immediately. No matter how minor an on-the-job injury may appear, it is important that it be reported immediately. This will enable an eligible employee to qualify for coverage as quickly as possible.

Neither TSI nor the insurance carrier will be liable for the payment of workers' compensation benefits for injuries that occur during an employee's voluntary participation in any off-duty recreational, social, or athletic activity sponsored by TSI.

Electronically Filed 06/21/2022 13:37 / / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

### **307** Personal Leave Benefits

Effective Date: 1/1/2013
Revision Date:

TSI provides paid personal leave benefits to all eligible employees for periods of temporary absence due to illnesses, non work-related injuries, or for personal matters. Eligible employee classification(s):

* Regular full-time employees
* Regular part-time employees

Eligible employees will accrue personal leave benefits at the rate of 2 days per year (.17 of a day for every full month of service). Personal leave benefits are calculated on the basis of a "benefit year." the 12-month period that begins when the employee starts to earn personal leave benefits.

Paid personal leave can be used in minimum increments of one-half day. An eligible employee may use personal leave benefits for an absence due to his or her own illness or injury, or that of a child, parent, or spouse of the employee, or for personal matters.

Employees who are unable to report to work due to illness or injury should notify their direct supervisor before the scheduled start of their workday if possible. The direct supervisor must also be contacted on each additional day of absence. Employees who are unable to report to work due to personal business should schedule the time off in advance, whenever possible.

If an employee is absent for three or more consecutive days due to illness or injury, a physician's statement must be provided verifying the disability and its beginning and expected ending dates. Such verification may be requested for other personal leave absences as well and may be required as a condition to receiving personal leave benefits.

Before returning to work from a personal leave absence of 3 calendar days or more caused by illness or injury, an employee must provide a physician's verification that he or she may safely return to work.

Personal leave benefits will be calculated based on the employee's base pay rate at the time of absence and will not include any special forms of compensation, such as incentives, commissions, bonuses. or shift differential.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

# *Truck Service, Inc.*
## 2012

Personal leave benefits are intended solely to provide income protection in the event of illness, non work related injury, or personal matters . Unused personal leave benefits will not be paid to employees while they are employed or upon termination of employment.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## **309** Bereavement Leave
Effective Date: 1/1/2013
Revision Date:

Employees who wish to take time off due to the death of an immediate family member should notify their supervisor immediately.

Up to 3 days of paid bereavement leave will be provided to eligible regular full time employees. The length of paid bereavement leave will be evaluated on a case by case basis and must be approved by the President or Vice President. Verification of absence may be requested prior to granting bereavement leave.

Bereavement pay is calculated based on the base pay rate at the time of absence and will not include any special forms of compensation, such as incentives, commissions, bonuses, or shift differential. Paid bereavement leave will count as worked hours for purposes of overtime pay calculations.

Bereavement leave will normally be granted unless there are unusual business needs or staffing requirements. Employees may, with their supervisors' approval, use any available paid leave for additional time off as necessary.

TSI defines "immediate family" as the employee's spouse, parent, child, sibling; the employee's spouse's parent, child, or sibling; the employee's child's spouse; grandparents or grandchildren.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

### **311** Jury Duty
Effective Date: 1/1/2013
Revision Date:

TSI encourages employees to fulfill their civic responsibilities by serving jury duty when required. Employees in an eligible classification may request up to two weeks of paid jury duty leave over any one year period.

Jury duty pay will be calculated on the employee's base pay rate times the number of hours the employee would otherwise have worked on the day of absence. Employee classifications that qualify for paid jury duty leave are:

   * Regular full-time employees

If employees are required to serve jury duty beyond the period of paid jury duty leave, they may use any available paid time off (for example, vacation benefits) or may request an unpaid jury duty leave of absence.

Employees must show the jury duty summons to their supervisor as soon as possible so that the supervisor may make arrangements to accommodate their absence. Of course, employees are expected to report for work whenever the court schedule permits.

Either TSI or the employee may request an excuse from jury duty if, in TSI's judgment, the employee's absence would create serious operational difficulties.

TSI will continue to provide health insurance benefits for the full term of the jury duty absence.

Benefit accruals such as vacation, personal leave, or holiday benefits will not be suspended during unpaid jury duty leave .

Electronically Filed 06/21/2022 13:37 / / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

### 313 Benefits Continuation (COBRA)
Effective Date: 1/1/2013
Revision Date:

The federal Consolidated Omnibus Budget Reconciliation Act (COBRA) gives employees and their qualified beneficiaries the opportunity to continue health insurance coverage under TSI's health plan when a "qualifying event" would normally result in the loss of eligibility. Some common qualifying events are resignation, termination of employment, or death of an employee; a reduction in an employee's hours or a leave of absence; an employee's divorce or legal separation; and a dependent child no longer meeting eligibility requirements.

Under COBRA, the employee or beneficiary pays the full cost of coverage at TSI's group rates plus an administration fee. TSI provides each eligible employee with a written notice describing rights granted under COBRA when the employee becomes eligible for coverage under TSI's health insurance plan. The notice contains important information about the employee's rights and obligations.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

### **316** Health Insurance
Effective Date: 1/1/2013
Revision Date:

TSI's health insurance plan provides employees and their dependents access to medical, dental, and vision care insurance benefits. Employees in the following employment classifications are eligible to participate in the health insurance plan:

   * Regular full-time employees

Eligible employees may participate in the health insurance plan subject to all terms and conditions of the agreement between TSI and the insurance carrier.

A change in employment classification that would result in loss of eligibility to participate in the health insurance plan may qualify an employee for benefits continuation under the Consolidated Omnibus Budget Reconciliation Act (COBRA). Refer to the Benefits Continuation (COBRA) Policy for more information.

Details of the health insurance plan are described in the Summary Plan Description (SPD). An SPD and information on cost of coverage will be provided in advance of enrollment to eligible employees. Contact the Vice President for more information about health insurance benefits.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
## 2012

### 317 Life Insurance
Effective Date: 1/1/2013
Revision Date:

Life insurance offers you and your family important financial protection. TSI provides a basic life insurance plan for eligible employees. Additional supplemental life insurance coverage may also be purchased.

Accidental Death and Dismemberment (AD&D) insurance provides protection in cases of serious injury or death resulting from an accident. AD&D insurance coverage is provided as part of the basic life insurance plan.

Employees in the following employment classifications are eligible to participate in the life insurance plan:

* Regular full-time employees

Eligible employees may participate in the life insurance plan subject to all terms and conditions of the agreement between TSI and the insurance carrier.

Details of the basic life insurance plan including benefit amounts are described in the Summary Plan Description provided to eligible employees. Contact the Vice President for more information about life insurance benefits.

Electronically Filed 06/21/2022 13:37 / / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
## 2012

### **318** Short-Term Disability
**Effective Date:** 1/1/2013
**Revision Date:**

TSI provides a short-term disability (STD) benefits plan to eligible employees who are unable to work because of a qualifying disability due to an injury or illness. Employees in the following employment classifications are eligible to participate in the STD plan:

* Regular full-time employees

Eligible employees may participate in the STD plan subject to all terms and conditions of the agreement between TSI and the insurance carrier. STD benefits begin on the eighth calendar day after the beginning of the disability leave. STD benefits are equal to $300 per week, less applicable taxes and other statutory deductions, for a maximum of 26 weeks. Health insurance benefits will remain in effect during the STD leave at no cost to the employee. Verification of the disability will be required prior to the payment of STD benefits and throughout the STD leave.

Disabilities arising from pregnancy or pregnancy-related illness are treated the same as any other illness that prevents an employee from working. Disabilities covered by workers' compensation are excluded from STD coverage.

Contact the Vice President for more information about STD benefits.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## 320 401(k) Savings Plan
Effective Date: 1/1/2013
Revision Date:

TSI has established a 401(k) savings plan to provide employees the potential for future financial security for retirement.

To be eligible to join the 401(k) savings plan, you must complete 6 months of service and be 21 years of age or older. You may join the plan only during open enrollment periods. Eligible employees may participate in the 401(k) plan subject to all terms and conditions of the plan.

The 401(k) savings plan allows you to elect how much salary you want to contribute and direct the investment of your plan account, so you can tailor your own retirement package to meet your individual needs. TSI also contributes an additional matching amount to each employee's 401(k) contribution.

Because your contribution to a 401(k) plan is automatically deducted from your pay before federal and state tax withholdings are calculated, you save tax dollars now by having your current taxable amount reduced. While the amounts deducted generally will be taxed when they are finally distributed, favorable tax rules typically apply to 401(k) distributions.

Complete details of the 401(k) savings plan are described in the Summary Plan Description provided to eligible employees. Contact the Vice President for more information about the 401(k) plan.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

### 324 Employee Assistance Program
Effective Date: 1/1/2013
Revision Date:

TSI cares about the health and well-being of its employees and recognizes that a variety of personal problems can disrupt their personal and work lives. While many employees solve their problems either on their own or with the help of family and friends, sometimes employees need professional assistance and advice.

Through the Employee Assistance Program (EAP), TSI provides confidential access to professional counseling services for help in confronting such personal problems as alcohol and other substance abuse, marital and family difficulties, financial or legal troubles, and emotional distress. The EAP is available to all employees and their immediate family members offering problem assessment, short-term counseling, and referral to appropriate community and private services.

The EAP is strictly confidential and is designed to safeguard your privacy and rights. Information given to the EAP counselor may be released only if requested by you in writing. All counselors are guided by a Professional Code of Ethics.

Personal information concerning employee participation in the EAP is maintained in a confidential manner. No information related to an employee's participation in the program is entered into the personnel file.

There is no cost for employees to consult with an EAP counselor. If further counseling is necessary, the EAP counselor will outline community and private services available. The counselor will also let employees know whether any costs associated with private services may be covered by their health insurance plan. Costs that are not covered are the responsibility of the employee.

Minor concerns can become major problems if you ignore them. No issue is too small or too large, and a professional counselor is available to help you when you need it. Call the EAP at 888-267-8126 to contact an EAP counselor.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
**2012**

## 380 Training
Effective Date: 1/1/2013
Revision Date:
To keep our employees trained in the most current technology and practices within our industry, TSI utilizes the following training tools:

    1) TSI in-house training classes
    2) ASE certification (See Policy 381)
    3) TSI  vendor and industry clinics
    4) CDL license training

The TSI Vice President of Operations periodically conducts training classes on various subjects. These courses vary in length but generally last one to five days. Employees are chosen to attend these classes based on their skills, attitude and potential for professional development.

COMPENSATION AND EXPENSE REIMBURSEMENT All time spent attending TSI in-house training classes is considered time worked for all employees and is paid in accordance with normal policy. Travel time required to reach an out of town class location will not be paid time unless it occurs during those hours that the traveling employee normally works. In all cases, paid hours (including travel time) while attending classes are treated in accordance with normal policy for purposes of computing overtime pay.

TSI will pay all reasonable employee expenses associated with attending an out-of-town training class in accordance with its normal business expense reimbursement policy. Alcoholic beverages are not reimbursable under this or any other TSI expense policy. Along with other indicators, attendance at these training classes is a significant factor in evaluating an employee's job performance.

TSI  VENDOR CLINICS From time-to-time, TSI hosts on or off site vendor training clinics. These are generally a 1-3 hour clinic designed to inform our customers and employees of current technology in a specific area. TSI employees are encouraged to attend these clinics to further their knowledge of our industry and their jobs. In certain situations, attendance may be mandatory. If you are required to attend such a session, your supervisor will provide you with reasonable advance notice. Non-exempt employees will be compensated for attendance at only those clinics where attendance is required. Along with other indicators, attendance at these training clinics is a significant factor in evaluating an employee's job performance.

CDL LICENSE is required by law for anyone driving commercially licensed vehicles in excess of 26,000 lbs.. and or equipped with air brakes. Therefore all employees whose job involves driving

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



## *Truck Service, Inc.*
2012

customer vehicles subject to CDL license requirements is REQUIRED to hold a valid CDL license. TSI will pay for most costs associated with obtaining or maintaining the CDL license while employed by TSI.

Electronically Filed 06/21/2022 13:37 / / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
**2012**

**381** ASE Tests
Effective Date: 1/1/2013
Revision Date:

As part of the TSI training program, we encourage all employees to participate in the ASE certification testing program. This program helps to keep our employees up to date on the latest technology and methods of our industry as well as provide technical credibility for the services we offer to our customers.

TSI will reimburse employees for registration and ASE test fees (including recertification tests fees) after completing the tests, and will pay a $125 bonus for each test passed up to a maximum of four tests per testing period. Recertification tests are not eligible for the bonus. All tests must be preapproved by your manager before registering. Only tests related to the services we offer are eligible for reimbursement and bonus. Please refer to www.ase.com for a list of tests, registration information and study aids.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
## 2012

### **382** Performance Incentive Pay Program
Effective Date: 1/1/2013
Revision Date:

TSI offers all regular full time mechanics and technicians a performance incentive program as a supplement to their base hourly pay. Eligibility for this program begins the first day of the month following completion of your probationary period or end of apprenticeship period whichever is later.

Incentives earned are generally paid within 15 working days after the end of the month. The employee must have been employed the entire month and be employed with TSI at time of payment to be eligible to receive incentive pay.

For details about the incentive pay program consult your service manager.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



*Truck Service, Inc.*
2012

### 383 Personal Protective Equipment (PPE)
Effective Date: 1/1/2013
Revision Date:

UNIFORMS: TSI will furnish uniforms to shop mechanics. Mechanics' uniforms will be cleaned and pressed each week at the Company's expense. Each qualifying employee will be issued an adequate quantity of shirts and pants.

All non-mechanic personnel will be furnished TSI shirts annually at the Company's expense.These shirts are the property of the employer and are to be worn daily and kept clean by the employee.

Upon termination of employment, all uniforms are to be returned to the Company. The employee's final paycheck will be held until the uniforms are returned or a deduction to cover the cost of the unreturned uniforms has been made.

SAFETY SHOES: It is mandatory that steel toe safety shoes be worn by all shop, delivery and counter employees. There will be a $50.00 per year allowance for all non-mechanics, to purchase safety shoes. Shop mechanics will be granted a shoe allowance of $100.00 per year. Employees must submit a receipt with proof of the steel toe requirement to receive their safety shoe allowance.

SAFETY EYEWEAR: It is also mandatory that all mechanics and shop personnel wear safety eyewear (glasses, goggles, face shield) while they are under vehicles, grinding, bending, cutting, or performing other activities where flying or falling objects are a reasonable possibility in the shop. This policy is designed with the express purpose of protecting the employee's most valuable sense, their eyesight. Please do not take unnecessary risks in this regard. TSI will provide reimbursement up to $75 every year for those employees who require prescription safety lenses.

TSI will provide any other PPE as necessary for the safety of our employees (gloves, hardhat, safety vests, harnesses, etc). Please see your service manager for any needs you may have.

Failure to utilize PPE as defined above will be considered a violation of TSI work rules and subject to disciplinary action, up to and including termination of employment.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
## 2012

**384** Employee Tools
Effective Date: 1/1/2013
Revision Date:

Employees classified as mechanics or technicians are required to provide their own hand tools as would be required to perform the normal functions of their job. TSI is not responsible for loss or damage to personal property, including tools, except where insurance coverage is provided. Accordingly employees should take necessary precautions to safeguard their personal property.

Employee owned tools are insured by TSI only to the extent that such tools are included on a detailed inventory provided to the General Manager and Vice President and updated as changes occur.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
**2012**

## 385 Employee Purchases
Effective Date: 1/1/2013
Revision Date:

As a benefit to TSI employees, purchases (parts and service) may be made for their own personal use and charged to an employee house account. The markup for all employee parts purchases is cost x 1.11 (10% gross margin). The employee labor rate for any in house repairs is 2/3 of the shop's normal labor rate.

Employee purchases are limited to stocking parts from vendors that TSI normally does business with. Any exceptions to this must be preapproved by the General Manager. Special order parts are <u>not eligible</u> for return or refund.

Employee purchases are permitted only for personal use by the employee. Re selling or other use of employee purchases is a violation of company policy, subject to disciplinary action up to and including termination of employment.

Unless preapproved by the Vice President all employee purchase charges will be payroll deducted in the month following the date of purchase as follows:

| | |
|---|---|
| $1 - $50 | Deducted in one payment |
| $51 - $100 | Deducted in three payments |
| Over $100 | Deducted in four payments |

Employee charge accounts are established after the employee has completed their 90 day probationary period. Full time regular employees have a credit limit of $300, part time regular employees have a credit limit of $150. Credit limits may be exceeded with preapproval by the Vice President.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
**2012**

## **401** Timekeeping
Effective Date: 1/1/2013
Revision Date:

Accurately recording time worked is the responsibility of every nonexempt employee. Federal and state laws require TSI to keep an accurate record of time worked in order to calculate employee pay and benefits. Time worked is all the time actually spent on the job performing assigned duties.

Nonexempt employees should accurately record the time they begin and end their work, as well as the beginning and ending time of each meal period. They should also record the beginning and ending time of any split shift or departure from work for personal reasons. Overtime work must always be approved before it is performed.

Altering, falsifying, tampering with time records, or recording time on another employee's time record may result in disciplinary action, up to and including termination of employment.

Nonexempt employees should report to work no more than 7 minutes prior to their scheduled starting time nor stay more than 7 minutes after their scheduled stop time without expressed, prior authorization from their supervisor.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

**403** Paydays
Effective Date: 1/1/2013
Revision Date:

Nonexempt employees are paid weekly every Friday. Exempt employees are paid biweekly on every other Friday. Each paycheck for nonexempt employees will include earnings for all work performed through the end of the previous payroll period. Each paycheck for exempt employees will include earnings for all work performed through the actual pay date.

In the event that a regularly scheduled payday falls on a day off, such as a weekend or holiday, employees will receive pay on the last day of work before the regularly scheduled payday.

If a regular payday falls during an employee's vacation, the employee's paycheck will be available upon his or her return from vacation.

Employees may have pay directly deposited into their bank accounts if they provide advance written authorization to TSI. Employees will receive an itemized statement of wages when TSI makes direct deposits.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

### 405 Employment Termination
Effective Date: 1/1/2013
Revision Date:

Termination of employment is an inevitable part of personnel activity within any organization, and many of the reasons for termination are routine. Below are examples of some of the most common circumstances under which employment is terminated:

* Resignation - voluntary employment termination initiated by an employee.
* Discharge - involuntary employment termination initiated by the organization.
* Layoff - involuntary employment termination initiated by the organization for nondisciplinary reasons.
* Retirement - voluntary employment termination initiated by the employee meeting age, length of service, and any other criteria for retirement from the organization.

TSI will generally schedule exit interviews at the time of employment termination. The exit interview will afford an opportunity to discuss such issues as employee benefits, conversion privileges, repayment of outstanding debts to TSI, or return of TSI-owned property. Suggestions, complaints, and questions can also be voiced.

Since employment with TSI is based on mutual consent, both the employee and TSI have the right to terminate employment at will, with or without cause, at any time.

Employee benefits will be affected by employment termination in the following manner. All accrued, vested benefits that are due and payable at termination will be paid. Some benefits may be continued at the employee's expense if the employee so chooses. The employee will be notified in writing of the benefits that may be continued and of the terms, conditions, and limitations of such continuance.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
**2012**

### **409** Administrative Pay Corrections
Effective Date: 1/1/2013
Revision Date:

TSI takes all reasonable steps to ensure that employees receive the correct amount of pay in each paycheck and that employees are paid promptly on the scheduled payday.

In the unlikely event that there is an error in the amount of pay, the employee should promptly bring the discrepancy to the attention of the Vice President so that corrections can be made as quickly as possible.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
**2012**

## **410** Pay Deductions and Setoffs
Effective Date: 1/1/2013
Revision Date:

The law requires that TSI make certain deductions from every employee's compensation. Among these are applicable federal, state, and local income taxes. TSI also must deduct Social Security taxes on each employee's earnings up to a specified limit that is called the Social Security "wage base." TSI matches the amount of Social Security taxes paid by each employee.

TSI offers programs and benefits beyond those required by law. Eligible employees may voluntarily authorize deductions from their paychecks to cover the costs of participation in these programs.

Pay setoffs are pay deductions taken by TSI, usually to help pay off a debt or obligation to TSI or others.

If you have questions concerning why deductions were made from your paycheck or how they were calculated, your supervisor can assist in having your questions answered.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

### **501** Safety
Effective Date: 1/1/2013
Revision Date:

To assist in providing a safe and healthful work environment for employees, customers, and visitors, TSI has established a workplace safety program. This program is a top priority for TSI. The President has responsibility for implementing, administering, monitoring, and evaluating the safety program. Its success depends on the alertness and personal commitment of all.

TSI provides information to employees about workplace safety and health issues through regular internal communication channels such as supervisor-employee meetings, bulletin board postings, memos, or other written communications.

Employees and supervisors receive periodic workplace safety training. The training covers potential safety and health hazards and safe work practices and procedures to eliminate or minimize hazards.

Each employee is expected to obey safety rules and to exercise caution in all work activities. Employees must immediately report any unsafe condition to the appropriate supervisor. Employees who violate safety standards, who cause hazardous or dangerous situations, or who fail to report or, where appropriate, remedy such situations, may be subject to disciplinary action, up to and including termination of employment.

In the case of accidents that result in injury, regardless of how insignificant the injury may appear, employees should immediately notify the President or the appropriate supervisor. Such reports are necessary to comply with laws and initiate insurance and workers' compensation benefits procedures.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
**2012**

## 502 Work Schedules
Effective Date: 1/1/2013
Revision Date:

Work schedules for employees vary throughout our organization. Supervisors will advise employees of their individual work schedules. Staffing needs and operational demands may necessitate variations in starting and ending times, as well as variations in the total hours that may be scheduled each day and week.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



## *Truck Service, Inc.*
2012

**504** Use of Phone Systems

Effective Date: 1/1/2013
Revision Date:

Personal use of the telephone for long-distance and toll calls is not permitted. Employees should practice discretion when making local personal calls and may be required to reimburse TSI for any charges resulting from their personal use of the telephone.

To ensure effective telephone communications, employees should always use the approved greeting and speak in a courteous and professional manner. Please confirm information received from the caller, and hang up only after the caller has done so.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



*Truck Service, Inc.*

2012

## **505** Smoking

Effective Date: 1/1/2013

Revision Date:

In keeping with TSI's intent to provide a safe and healthful work environment, smoking is prohibited throughout the workplace.

This policy applies equally to all employees, customers, and visitors.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## **506** Rest and Meal Periods
Effective Date: 1/1/2013
Revision Date:

Each workday, full-time nonexempt employees are provided with 2 rest periods. Supervisors will advise employees of the regular rest period length and schedule. To the extent possible, rest periods will be provided in the middle of work periods. Since this time is counted and paid as time worked, employees must not be absent from their workstation beyond the allotted rest period time. Additional time absent from workstations for smoking is not permitted.

All full-time regular employees are provided with one meal period of 30 minutes in length each workday. Supervisors will schedule meal periods to accommodate operating requirements. Employees will be relieved of all active responsibilities and restrictions during meal periods and will not be compensated for that time.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
## 2012

## **507** Overtime
Effective Date: 1/1/2013
Revision Date:

When operating requirements or other needs cannot be met during regular working hours, employees may be scheduled to work overtime hours. When possible, advance notification of these mandatory assignments will be provided. All overtime work must receive the supervisor's prior authorization. Overtime assignments will be distributed as equitably as practical to all employees qualified to perform the required work.

Overtime compensation is paid to all nonexempt employees in accordance with federal and state wage and hour restrictions. Overtime pay is paid at one and one-half times straight time rate for all hours over 40 in a work week. Paid time off on personal leave, vacation, holidays or any other paid leave of absence will be considered hours worked for purposes of performing overtime calculations.

Failure to work scheduled overtime or overtime worked without prior authorization from the supervisor may result in disciplinary action, up to and including possible termination of employment.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
**2012**

### **508** Use of Equipment and Vehicles
Effective Date: 1/1/2013
Revision Date:

Equipment and vehicles essential in accomplishing job duties are expensive and may be difficult to replace. When using property, employees are expected to exercise care, perform required maintenance, and follow all operating instructions, safety standards, and guidelines.

Please notify the supervisor if any equipment, machines, tools, or vehicles appear to be damaged, defective, or in need of repair. Prompt reporting of damages, defects, and the need for repairs could prevent deterioration of equipment and possible injury to employees or others. The supervisor can answer any questions about an employee's responsibility for maintenance and care of equipment or vehicles used on the job.

The improper, careless, negligent, destructive, or unsafe use or operation of equipment or vehicles, as well as excessive or avoidable traffic and parking violations, can result in disciplinary action, up to and including termination of employment.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## **510** Emergency Closings
Effective Date: 1/1/2013
Revision Date:

At times, emergencies such as severe weather, fires, power failures, or earthquakes, can disrupt company operations. In extreme cases, these circumstances may require the closing of a work facility.

When operations are officially closed due to emergency conditions, the time off from scheduled work will be unpaid. However, with supervisory approval, employees may use available paid leave time, such as unused vacation benefits.

In cases where an emergency closing is not authorized, employees who fail to report for work will not be paid for the time off. Employees may request available paid leave time such as unused vacation benefits.

Employees in essential operations may be asked to work on a day when operations are officially closed. In these circumstances, employees who work will receive regular pay.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
**2012**

## **512** Business Travel Expenses
Effective Date: 1/1/2013
Revision Date:

TSI will reimburse employees for reasonable business travel expenses incurred while on assignments away from the normal work location. All business travel must be approved in advance by the TSI management.

Employees whose travel plans have been approved should make all travel arrangements through TSI's corporate office.

When approved, the actual costs of travel, meals, lodging, and other expenses directly related to accomplishing business travel objectives will be reimbursed by TSI. Employees are expected to limit expenses to reasonable amounts.

Expenses that generally will be reimbursed include the following:

* Airfare or train fare for travel in coach or economy class or the lowest available fare.
* Car rental fees, only for compact or mid-sized cars.
* Fares for shuttle or airport bus service, where available; costs of public transportation for other ground travel.
* Taxi fares, only when there is no less expensive alternative.
* Mileage costs for use of personal cars, only when less expensive transportation is not available.
* Cost of standard accommodations in low to mid-priced hotels, motels, or similar lodgings.
* Cost of meals, no more lavish than would be eaten at the employee's own expense. (Alcohol is excluded)
* Tips not exceeding 15% of the total cost of a meal or 10% of a taxi fare.
* Charges for telephone calls, fax, and similar services required for business purposes.

Employees who are involved in an accident while traveling on business must promptly report the incident to their immediate supervisor. Vehicles owned, leased, or rented by TSI may not be used for personal use without prior approval.

Cash advances to cover reasonable anticipated expenses may be made to employees, after travel has been approved. Employees should submit a written request to their supervisor when travel advances are needed.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
**2012**

When travel is completed, employees should submit completed travel expense reports within 14 days. Reports should be accompanied by receipts for all individual expenses.

Employees should contact their supervisor for guidance and assistance on procedures related to travel arrangements, travel advances, expense reports, reimbursement for specific expenses, or any other business travel issues.

Abuse of this business travel expenses policy, including falsifying expense reports to reflect costs not incurred by the employee, can be grounds for disciplinary action, up to and including termination of employment.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## 514 Visitors in the Workplace
Effective Date: 1/1/2013
Revision Date:

To provide for the safety and security of employees and the facilities at TSI, only authorized visitors are allowed in the workplace. Restricting unauthorized visitors helps maintain safety standards, protects against theft, ensures security of equipment, protects confidential information, safeguards employee welfare, and avoids potential distractions and disturbances.

Because of safety and security reasons, family and friends of employees are discouraged from visiting. In cases of emergency, employees will be called to meet any visitor outside their work area.

All visitors should enter TSI at the main entrance. Authorized visitors will receive directions or be escorted to their destination. Employees are responsible for the conduct and safety of their visitors.

If an unauthorized individual is observed on TSI's premises, employees should immediately notify their supervisor or, if necessary, direct the individual to the main entrance.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## 516 Computer and Email Usage
Effective Date: 1/1/2013
Revision Date:

Computers, computer files, the email system, and software furnished to employees are TSI property intended for business use. Employees should not use a password, access a file, or retrieve any stored communication without authorization. To ensure compliance with this policy, computer and email usage may be monitored.

TSI strives to maintain a workplace free of harassment and sensitive to the diversity of its employees. Therefore, TSI prohibits the use of computers and the email system in ways that are disruptive, offensive to others, or harmful to morale.

For example, the display or transmission of sexually explicit images, messages, and cartoons is not allowed. Other such misuse includes, but is not limited to, ethnic slurs, racial comments, off-color jokes, or anything that may be construed as harassment or showing disrespect for others.

Email may not be used to solicit others for commercial ventures, religious or political causes, outside organizations, or other nonbusiness matters.

TSI purchases and licenses the use of various computer software for business purposes and does not own the copyright to this software or its related documentation. Unless authorized by the software developer, TSI does not have the right to reproduce such software for use on more than one computer.

Employees may only use software on local area networks or on multiple machines according to the software license agreement. TSI prohibits the illegal duplication of software and its related documentation.

Employees should notify their immediate supervisor, the President or any member of management upon learning of violations of this policy. Employees who violate this policy will be subject to disciplinary action, up to and including termination of employment.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## 517 Internet Usage
**Effective Date:** 1/1/2013
**Revision Date:**

Internet access to global electronic information resources on the World Wide Web is provided by TSI to assist employees in obtaining work-related data and technology. The following guidelines have been established to help ensure responsible and productive Internet usage. While Internet usage is intended for job-related activities, incidental and occasional brief personal use is permitted within reasonable limits.

All Internet data that is composed, transmitted, or received via our computer communications systems is considered to be part of the official records of TSI and, as such, is subject to disclosure to law enforcement or other third parties. Consequently, employees should always ensure that the business information contained in Internet email messages and other transmissions is accurate, appropriate, ethical, and lawful.

The equipment, services, and technology provided to access the Internet remain at all times the property of TSI. As such, TSI reserves the right to monitor Internet traffic, and retrieve and read any data composed, sent, or received through our online connections and stored in our computer systems.

Data that is composed, transmitted, accessed, or received via the Internet must not contain content that could be considered discriminatory, offensive, obscene, threatening, harassing, intimidating, or disruptive to any employee or other person. Examples of unacceptable content may include, but are not limited to, sexual comments or images, racial slurs, gender-specific comments, or any other comments or images that could reasonably offend someone on the basis of race, age, sex, religious or political beliefs, national origin, disability, sexual orientation, or any other characteristic protected by law.

The unauthorized use, installation, copying, or distribution of copyrighted, trademarked, or patented material on the Internet is expressly prohibited. As a general rule, if an employee did not create material, does not own the rights to it, or has not gotten authorization for its use, it should not be put on the Internet. Employees are also responsible for ensuring that the person sending any material over the Internet has the appropriate distribution rights.

Internet users should take the necessary anti-virus precautions before downloading or copying any file from the Internet. All downloaded files are to be checked for viruses: all compressed files are to be checked before and after decompression.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
## 2012

Abuse of the Internet access provided by TSI in violation of law or TSI policies will result in disciplinary action, up to and including termination of employment. Employees may also be held personally liable for any violations of this policy. The following behaviors are examples of previously stated or additional actions and activities that are prohibited and can result in disciplinary action:

* Sending or posting discriminatory, harassing, or threatening messages or images
* Using the organization's time and resources for personal gain
* Stealing, using, or disclosing someone else's code or password without authorization
* Copying, pirating, or downloading software and electronic files without permission
* Sending or posting confidential material, trade secrets, or proprietary information outside of the organization
* Violating copyright law
* Failing to observe licensing agreements
* Engaging in unauthorized transactions that may incur a cost to the organization or initiate unwanted Internet services and transmissions
* Sending or posting messages or material that could damage the organization's image or reputation
* Participating in the viewing or exchange of pornography or obscene materials
* Sending or posting messages that defame or slander other individuals
* Attempting to break into the computer system of another organization or person
* Refusing to cooperate with a security investigation
* Sending or posting chain letters, solicitations, or advertisements not related to business purposes or activities
* Using the Internet for political causes or activities, religious activities, or any sort of gambling
* Jeopardizing the security of the organization's electronic communications systems
* Sending or posting messages that disparage another organization's products or services
* Passing off personal views as representing those of the organization
* Sending anonymous email messages
* Engaging in any other illegal activities

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
**2012**

**518** Workplace Monitoring
Effective Date: 1/1/2013
Revision Date:

Workplace monitoring may be conducted by TSI to ensure quality control, employee safety, security, and customer satisfaction.

Computers furnished to employees are the property of TSI. As such, computer usage and files may be monitored or accessed.

Because TSI is sensitive to the legitimate privacy rights of employees, every effort will be made to guarantee that workplace monitoring is done in an ethical and respectful manner.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

### **522** Workplace Violence Prevention
Effective Date: 1/1/2013
Revision Date:

TSI is committed to preventing workplace violence and to maintaining a safe work environment. TSI has adopted the following guidelines to deal with intimidation, harassment, or other threats of (or actual) violence that may occur during business hours or on its premises.

All employees, including supervisors and temporary employees, should be treated with courtesy and respect at all times. Employees are expected to refrain from fighting, "horseplay," or other conduct that may be dangerous to others. Firearms, weapons, and other dangerous or hazardous devices or substances are prohibited from inside the premises of TSI without proper authorization.

Conduct that threatens, intimidates, or coerces another employee, a customer, or a member of the public at any time, including off-duty periods, will not be tolerated. This prohibition includes all acts of harassment, including harassment that is based on an individual's sex, race, age, or any characteristic protected by federal, state, or local law.

All threats of (or actual) violence, both direct and indirect, should be reported as soon as possible to your immediate supervisor or any other member of management. This includes threats by employees, as well as threats by customers, vendors, solicitors, or other members of the public. When reporting a threat of violence, you should be as specific and detailed as possible.

All suspicious individuals or activities should also be reported as soon as possible to a supervisor. Do not place yourself in peril. If you see or hear a commotion or disturbance near your workstation, do not try to intercede or see what is happening.

TSI will promptly and thoroughly investigate all reports of threats of (or actual) violence and of suspicious individuals or activities. The identity of the individual making a report will be protected as much as is practical. In order to maintain workplace safety and the integrity of its investigation, TSI may suspend employees, either with or without pay, pending investigation.

Anyone determined to be responsible for threats of (or actual) violence or other conduct that is in violation of these guidelines will be subject to prompt disciplinary action up to and including termination of employment.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
## 2012

TSI encourages employees to bring their disputes or differences with other employees to the attention of their supervisors or the President before the situation escalates into potential violence. TSI is eager to assist in the resolution of employee disputes, and will not discipline employees for raising such concerns.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## **526** Cell Phone Usage
Effective Date: 1/1/2013
Revision Date:

TSI provides cellular telephones to some employees as a business tool. They are provided to assist employees in communicating with management and other employees, their customers, associates, and others with whom they may conduct business. Cell phone use is primarily intended for business-related calls. However, occasional, brief personal use is permitted within a reasonable limit. Cell phone invoices may be regularly monitored.

Employees may have access to a cell phone while in their vehicles and should remember that their primary responsibility is driving safely and obeying the rules of the road. Employees are prohibited from using cell phones to conduct business while driving and should safely pull off the road and come to a complete stop before dialing, texting or talking on the phone.

As a representative of TSI, cell phone users are reminded that the regular business etiquette employed when speaking from office phones or in meetings applies to conversations conducted over a cell phone.

Personal cell phone usage is prohibited inside TSI premises except during scheduled rest and meal periods.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## 601 Medical Leave
Effective Date: 1/1/2013
Revision Date:

TSI provides medical leaves of absence to eligible employees who are temporarily unable to work due to a serious non work related health condition or disability. For purposes of this policy, serious health conditions or disabilities include inpatient care in a hospital, hospice, or residential medical care facility; continuing treatment by a health care provider; and temporary disabilities associated with pregnancy, childbirth, and related medical conditions.

Employees in the following employment classifications are eligible to request medical leave as described in this policy:

* Regular full-time employees
* Regular part-time employees

Eligible employees should make requests for medical leave to their supervisors at least 30 days in advance of foreseeable events and as soon as possible for unforeseeable events.

A health care provider's statement must be submitted verifying the need for medical leave and its beginning and expected ending dates. Any changes in this information should be promptly reported to TSI. Employees returning from medical leave must submit a health care provider's verification of their fitness to return to work.

Eligible employees are normally granted leave for the period of the disability, up to a maximum of 26 weeks within any 12 month period. Any combination of medical leave and family leave may not exceed this maximum limit. If the initial period of approved absence proves insufficient. consideration will be given to a request for an extension. Employees will be required to first use any accrued paid leave time before taking medical leave.

Employees who sustain work-related injuries are eligible for a medical leave of absence for the period of disability in accordance with all applicable laws covering occupational disabilities.

Subject to the terms, conditions, and limitations of the applicable plans, TSI will continue to provide health insurance benefits for the full period of the approved medical leave at no cost to the employee.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
**2012**

Benefit accruals, such as vacation, sick leave, or holiday benefits, will be suspended during the leave and will resume upon return to active employment.

Employees with approved medical leave may receive compensation through TSI's short term disability insurance program in accordance with TSI policy number 318.

So that an employee's return to work can be properly scheduled, an employee on medical leave is requested to provide TSI with at least two weeks advance notice of the date the employee intends to return to work. When a medical leave ends, the employee will be reinstated to the same position, if it is available, or to an equivalent position for which the employee is qualified.

If an employee fails to return to work on the agreed upon return date, TSI will assume that the employee has resigned.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## **602** Family Leave
Effective Date: 1/1/2013
Revision Date:

TSI provides family leaves of absence without pay to eligible employees who wish to take time off from work duties to fulfill family obligations relating directly to childbirth, adoption, or placement of a foster child; or to care for a child, spouse, or parent with a serious health condition. A serious health condition means an illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital, hospice, or residential medical care facility; or continuing treatment by a health care provider.

Employees in the following employment classifications are eligible to request family leave as described in this policy:

* Regular full-time employees

Eligible employees may request family leave only after having completed 180 calendar days of service. Eligible employees should make requests for family leave to their supervisors at least 30 days in advance of foreseeable events and as soon as possible for unforeseeable events.

Employees requesting family leave related to the serious health condition of a child, spouse, or parent may be required to submit a health care provider's statement verifying the need for a family leave to provide care, its beginning and expected ending dates, and the estimated time required.

Eligible employees may request up to a maximum of 8 weeks of family leave within any 24 month period. Any combination of family leave and medical leave may not exceed this maximum limit. Employees will be required to first use any accrued paid leave time before taking unpaid family leave. Married employee couples may be restricted to a combined total of 8 weeks leave within any 24 month period for childbirth, adoption, or placement of a foster child; or to care for a parent with a serious health condition.

Subject to the terms, conditions, and limitations of the applicable plans, TSI will continue to pay for and provide health insurance benefits for the full period of the approved family leave.

Benefit accruals, such as vacation, sick leave, or holiday benefits, will be suspended during the leave and will resume upon return to active employment.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

So that an employee's return to work can be properly scheduled, an employee on family leave is requested to provide TSI with at least two weeks advance notice of the date the employee intends to return to work. When a family leave ends, the employee will be reinstated to the same position, **if it** is available, or to an equivalent position for which the employee is qualified.

If an employee fails to return to work on the agreed upon return date, TSI will assume that the employee has resigned.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## **603** Personal Leave
Effective Date: 1/1/2013
Revision Date:

TSI provides leaves of absence without pay to eligible employees who wish to take time off from work duties to fulfill personal obligations. Employees in the following employment classification(s) are eligible to request personal leave as described in this policy:

* Regular full-time employees

As soon as eligible employees become aware of the need for a personal leave of absence, they should request a leave from their supervisor.

Personal leave may be granted for a period of up to 30 calendar days every 1 year. With the supervisor's approval, an employee may take any available sick leave or vacation leave as part of the approved period of leave.

Requests for personal leave will be evaluated based on a number of factors, including anticipated workload requirements and staffing considerations during the proposed period of absence.

Subject to the terms, conditions, and limitations of the applicable plans, health insurance benefits will be provided by TSI for the first 30 calendar days after the approved personal leave begins. At that time, employees will become responsible for the full costs of these benefits if they wish coverage to continue. When the employee returns from personal leave, benefits will again be provided by TSI according to the applicable plans.

Benefit accruals, such as vacation, sick leave, or holiday benefits, will be suspended during the leave and will resume upon return to active employment.

When a personal leave ends, every reasonable effort will be made to return the employee to the same position, if it is available, or to a similar available position for which the employee is qualified. However, TSI cannot guarantee reinstatement in all cases.

If an employee fails to report to work promptly at the expiration of the approved leave period, TSI will assume the employee has resigned.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

*Truck Service, Inc.*

**2012**



# *Truck Service, Inc.*
2012

## **605** Military Leave
Effective Date: 1/1/2013
Revision Date:

A military leave of absence will be granted to employees who are absent from work because of service in the U.S. uniformed services in accordance with the Uniformed Services Employment and Reemployment Rights Act (USERRA). Advance notice of military service is required, unless military necessity prevents such notice or it is otherwise impossible or unreasonable.

The leave will be unpaid. However, employees may use any available paid time off for the absence.

Continuation of health insurance benefits is available as required by USERRA based on the length of the leave and subject to the terms, conditions and limitations of the applicable plans for which the employee is otherwise eligible.

Benefit accruals, such as vacation, sick leave, or holiday benefits, will be suspended during the leave and will resume upon the employee's return to active employment.

Employees on military leave for up to 30 days are required to return to work for the first regularly scheduled shift after the end of service, allowing reasonable travel time. Employees on longer military leave must apply for reinstatement in accordance with USERRA and all applicable state laws.

Employees returning from military leave will be placed in the position they would have attained had they remained continuously employed or a comparable one depending on the length of military service in accordance with USERRA. They will be treated as though they were continuously employed for purposes of determining benefits based on length of service.

Contact the Vice President for more information or questions about military leave.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

### 607 Pregnancy-Related Absences

Effective Date: 1/1/2013
Revision Date:

TSI will not discriminate against any employee who requests an excused absence for medical disabilities associated with pregnancy. Such leave requests will be evaluated according to the medical leave policy provisions outlined in this handbook and all applicable federal and state laws.

Requests for time off associated with pregnancy and/or childbirth, such as bonding and child care, not related to medical disabilities for those conditions will be considered in the same manner as other requests for unpaid family or personal leave.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## **701** Employee Conduct and Work Rules
Effective Date: 1/1/2013
Revision Date:

To ensure orderly operations and provide the best possible work environment, TSI expects employees to follow rules of conduct that will protect the interests and safety of all employees and the organization.

It is not possible to list all the forms of behavior that are considered unacceptable in the workplace. The following are examples of infractions of rules of conduct that may result in disciplinary action, up to and including termination of employment:

* Violation of TSI and personal cell phone usage policies
* Disclosure of compensation information to other TSI employees
* Theft or inappropriate removal or possession of property
* Falsification of time keeping records
* Working under the influence of alcohol or illegal drugs
* Possession, distribution, sale, transfer, or use of alcohol or illegal drugs in the workplace, while on duty, or while operating employer-owned vehicles or equipment
* Fighting or threatening violence in the workplace
* Boisterous or disruptive activity in the workplace
* Negligence or improper conduct leading to damage of employer-owned or customer-owned property
* Insubordination or other disrespectful conduct
* Violation of safety or health rules
* Smoking in prohibited areas
* Sexual or other unlawful or unwelcome harassment
* Possession of dangerous or unauthorized materials, such as explosives or firearms, in the workplace
* Excessive absenteeism or any absence without notice
* Unauthorized absence from work station during the workday
* Unauthorized use of telephones, mail system, or other employer-owned equipment
* Unauthorized disclosure of business "secrets" or confidential information
* Violation of personnel policies
* Unsatisfactory performance or conduct

Employment with TSI is at the mutual consent of TSI and the employee, and either party may terminate that relationship at any time, with or without cause, and with or without advance notice.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## **702** Drug and Alcohol Use
Effective Date: 1/1/2013
Revision Date:

It is TSI's desire to provide a drug-free, healthful, and safe workplace. To promote this goal, employees are required to report to work in appropriate mental and physical condition to perform their jobs in a satisfactory manner.

While on TSI premises and while conducting business-related activities off TSI premises, no employee may use, possess, distribute, sell, or be under the influence of alcohol or illegal drugs. The legal use of prescribed drugs is permitted on the job only if it does not impair an employee's ability to perform the essential functions of the job effectively and in a safe manner that does not endanger other individuals in the workplace.

Violations of this policy may lead to disciplinary action, up to and including immediate termination of employment, and/or required participation in a substance abuse rehabilitation or treatment program. Such violations may also have legal consequences.

To inform employees about important provisions of this policy, TSI has established a drug-free work place (DFWP) program. The program provides information on the dangers and effects of substance abuse in the workplace, resources available to employees, and consequences for violations of this policy. All employees will receive a copy of the DFWP program at commencement of employment.

Employees with questions or concerns about substance dependency or abuse are encouraged to use the resources of the Employee Assistance Program. They may also wish to discuss these matters with their supervisor or the Vice President of Human Resources to receive assistance or referrals to appropriate resources in the community.

Employees with drug or alcohol problems that have not resulted in, and are not the immediate subject of, disciplinary action may request approval to take unpaid time off to participate in a rehabilitation or treatment program through TSI's health insurance benefit coverage. Leave may be granted if the employee agrees to abstain from use of the problem substance; abides by all TSI policies, rules, and prohibitions relating to conduct in the workplace; and if granting the leave will not cause TSI any undue hardship.

Under the Drug-Free Workplace Act, an employee who performs work for a government contract or grant

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*

2912

must notify TSI of a criminal conviction for drug-related activity occurring in the workplace. The report must be made within five days of the conviction.

Employees with questions on this policy or issues related to drug or alcohol use in the workplace should raise their concerns with their supervisor or the Vice President of Human Resources without fear of reprisal.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
## 2012

### **703** Sexual and Other Unlawful Harassment
Effective Date: 1/1/2013
Revision Date:

TSI is committed to providing a work environment that is free from all forms of discrimination and conduct that can be considered harassing, coercive, or disruptive, including sexual harassment. Actions, words, jokes, or comments based on an individual's sex, race, color, national origin, age, religion, disability, or any other legally protected characteristic will not be tolerated.

Sexual harassment is defined as unwanted sexual advances, or visual, verbal, or physical conduct of a sexual nature. This definition includes many forms of offensive behavior and includes gender-based harassment of a person of the same sex as the harasser. The following is a partial list of sexual harassment examples:

* Unwanted sexual advances.

* Offering employment benefits in exchange for sexual favors.

* Making or threatening reprisals after a negative response to sexual advances.

* Visual conduct that includes leering, making sexual gestures, or displaying of sexually suggestive objects or pictures, cartoons or posters.

* Verbal conduct that includes making or using derogatory comments, epithets, slurs, or jokes.

* Verbal sexual advances or propositions.

* Verbal abuse of a sexual nature, graphic verbal commentaries about an individual's body, sexually degrading words used to describe an individual, or suggestive or obscene letters, notes, or invitations.

* Physical conduct that includes touching, assaulting, or impeding or blocking movements.

Unwelcome sexual advances (either verbal or physical), requests for sexual favors. and other verbal or physical conduct of a sexual nature constitute sexual harassment when: (1) submission to such conduct is made either explicitly or implicitly a term or condition of employment; (2) submission or rejection of the

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
201?

conduct is used as a basis for making employment decisions; or, (3) the conduct has the purpose or effect of interfering with work performance or creating an intimidating, hostile, or offensive work environment.

If you experience or witness sexual or other unlawful harassment in the workplace, report it immediately to your supervisor. If the supervisor is unavailable or you believe it would be inappropriate to contact that person, you should immediately contact the President or any other member of management. You can raise concerns and make reports without fear of reprisal or retaliation.

All allegations of sexual harassment will be quickly and discreetly investigated. To the extent possible, your confidentiality and that of any witnesses and the alleged harasser will be protected against unnecessary disclosure. When the investigation is completed, you will be informed of the outcome of the investigation.

Any supervisor or manager who becomes aware of possible sexual or other unlawful harassment must immediately advise the President or any member of management so it can be investigated in a timely and confidential manner. Anyone engaging in sexual or other unlawful harassment will be subject to disciplinary action, up to and including termination of employment.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

**704** Attendance and Punctuality
Effective Date: 1/1/2013
Revision Date:

To maintain a safe and productive work environment, TSI expects employees to be reliable and to be punctual in reporting for scheduled work. Absenteeism and tardiness place a burden on other employees and on TSI. In the rare instances when employees cannot avoid being late to work or are unable to work as scheduled, they should notify their supervisor as soon as possible in advance of the anticipated tardiness or absence.

Poor attendance and excessive tardiness are disruptive. Either may lead to disciplinary action, up to and including termination of employment.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

### 705 Personal Appearance
Effective Date: 1/1/2013
Revision Date:

Dress, grooming, and personal cleanliness standards contribute to the morale of all employees and affect the business image TSI presents to customers and visitors.

During business hours or when representing TSI, you are expected to present a clean, neat, and tasteful appearance. You should dress and groom yourself according to the requirements of your position and accepted social standards. This is particularly true if your job involves dealing with customers or visitors in person.

Your supervisor or department head is responsible for establishing a reasonable dress code appropriate to the job you perform. If your supervisor feels your personal appearance is inappropriate, you may be asked to leave the workplace until you are properly dressed or groomed. Under such circumstance, you will not be compensated for the time away from work. Consult your supervisor if you have questions as to what constitutes appropriate appearance. Where necessary, reasonable accommodation may be made to a person with a disability.

Without unduly restricting individual tastes, the following personal appearance guidelines should be followed:

* If provided, TSI uniforms or TSI logo clothing must be worn during working hours.
* Shoes must provide safe, secure footing, and offer protection against hazards.
* Hairstyles are expected to be in good taste.
* Unnaturally colored hair and extreme hairstyles, such as spiked hair and shaved heads, do not present an appropriate professional appearance.
* Offensive body odor and poor personal hygiene is not professionally acceptable.
* Jewelry should not be functionally restrictive, dangerous to job performance, or excessive.
* Facial jewelry, such as eyebrow rings, nose rings, lip rings, and tongue studs, is not professionally appropriate and must not be worn during business hours.
* Multiple ear piercings (more than one ring in each ear) are not professionally appropriate and must not be worn during business hours.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## **706** Return of Property
Effective Date: 1/1/2013
Revision Date:

Employees are responsible for items issued to them by TSI or in their possession or control, such as the following:

* Cell phones
* client lists
* credit cards
* equipment
* keys
* manuals
* protective equipment
* security passes
* tools
* uniforms
* vehicles
* written materials

Employees must return all TSI property immediately upon request or upon termination of employment. Where permitted by applicable laws, TSI may withhold from the employee's check or final paycheck the cost of any items that are not returned when required. TSI may also take all action deemed appropriate to recover or protect its property.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2912

## **708** Resignation
Effective Date: 1/1/2013
Revision Date:

Resignation is a voluntary act initiated by the employee to terminate employment with TSI. Although advance notice is not required, TSI requests at least 2 weeks' written resignation notice from all employees.

Prior to an employee's departure, an exit interview will be scheduled to discuss the reasons for resignation and the effect of the resignation on benefits.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## 710 Security Inspections
Effective Date: 1/1/2013
Revision Date:

TSI wishes to maintain a work environment that is free of illegal drugs, alcohol, firearms, explosives, or other improper materials. To this end, TSI prohibits the possession, transfer, sale, or use of such materials on its premises. TSI requires the cooperation of all employees in administering this policy.

Desks. lockers, and other storage devices may be provided for the convenience of employees but remain the sole property of TSI. Accordingly, they, as well as any articles found within them, can be inspected by any agent or representative of TSI at any time, either with or without prior notice.

TSI likewise wishes to discourage theft or unauthorized possession of the property of employees, TSI, visitors, and customers. To facilitate enforcement of this policy, TSI or its representative may inspect not only desks and lockers but also persons entering and/or leaving the premises and any packages or other belongings. Any employee who wishes to avoid inspection of any articles or materials should not bring such items onto TSI's premises.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

**714** Drug Testing
Effective Date: 1/1/2013
Revision Date:

TSI is committed to providing a safe, efficient, and productive work environment for all employees. Using or being under the influence of drugs or alcohol on the job may pose serious safety and health risks. To help ensure a safe and healthful working environment, job applicants and employees may be asked to provide body substance samples (such as urine and/or blood) to determine the illicit or illegal use of drugs and alcohol. Refusal to submit to drug testing may result in disciplinary action, up to and including termination of employment.

The Employee Assistance Program (EAP) provides confidential counseling and referral services to employees for assistance with such problems as drug and/or alcohol abuse or addiction. It is the employee's responsibility to seek assistance from the EAP prior to reaching a point where his or her judgment, performance, or behavior has led to imminent disciplinary action. Participation in the EAP after the disciplinary process has begun may not preclude disciplinary action, up to and including termination of employment.

Copies of the drug testing policy will be provided to all employees. Employees will be asked to sign an acknowledgement form indicating that they have received a copy of the drug testing policy. Questions concerning this policy or its administration should be directed to the Vice President Human Resources.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
20??

### **716** Progressive Discipline
Effective Date: 1/1/2013
Revision Date:

The purpose of this policy is to state TSI's position on administering equitable and consistent discipline for unsatisfactory conduct in the workplace.

TSI's own best interest lies in ensuring fair treatment of all employees and in making certain that disciplinary actions are prompt, uniform, and impartial. The major purpose of any disciplinary action is to correct the problem, prevent recurrence, and prepare the employee for satisfactory service in the future.

Although employment with TSI is based on mutual consent and both the employee and TSI have the right to terminate employment at will, with or without cause or advance notice, TSI may use progressive discipline at its discretion.

Disciplinary action may call for any of four steps -- verbal warning, written warning, suspension with or without pay, or termination of employment -- depending on the severity of the problem and the number of occurrences. There may be circumstances when one or more steps are bypassed.

Progressive discipline means that, with respect to most disciplinary problems, these steps will normally be followed: a first offense may call for a verbal warning; a next offense may be followed by a written warning; another offense may lead to a suspension; and, still another offense may then lead to termination of employment.

TSI recognizes that there are certain types of employee problems that are serious enough to justify either a suspension, or, in extreme situations, termination of employment, without going through the usual progressive discipline steps.

While it is impossible to list every type of behavior that may be deemed a serious offense, the Employee Conduct and Work Rules policy includes examples of problems that may result in immediate suspension or termination of employment. However, the problems listed are not all necessarily serious offenses, but may be examples of unsatisfactory conduct that will trigger progressive discipline.

By using progressive discipline, we hope that most employee problems can be corrected at an early stage, benefiting both the employee and TSI.

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

***Truck Service, Inc.***

2012

Electronically Filed 06/21/2022 13:37 / / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD

RF



# *Truck Service, Inc.*
2012

## **722** Workplace Etiquette
Effective Date: 1/1/2013
Revision Date:

TSI strives to maintain a positive work environment where employees treat each other with respect and courtesy. Sometimes issues arise when employees are unaware that their behavior in the workplace may be disruptive or annoying to others. Many of these day-to-day issues can be addressed by politely talking with a co-worker to bring the perceived problem to his or her attention. In most cases, common sense will dictate an appropriate resolution. TSI encourages all employees to keep an open mind and graciously accept constructive feedback or a request to change behavior that may be affecting another employee's ability to concentrate and be productive.

The following workplace etiquette guidelines are not necessarily intended to be hard and fast work rules with disciplinary consequences. They are simply suggestions for appropriate workplace behavior to help everyone be more conscientious and considerate of co-workers and the work environment. Please contact the Immediate supervisor if you have comments, concerns, or suggestions regarding these workplace etiquette guidelines.

* Avoid public accusations or criticisms of other employees. Address such issues privately with those involved or your supervisor.
* Try to minimize unscheduled interruptions of other employees while they are working.
* Communicate by email or phone whenever possible, instead of walking unexpectedly into someone's office or workspace.
* Be conscious of how your voice travels, and try to lower the volume of your voice when talking on the phone or to others in open areas.
* Keep socializing to a minimum, and try to conduct conversations in areas where the noise will not be distracting to others.
* Minimize talking between workspaces  Instead, conduct conversations with others in their workspace.
* Refrain from using inappropriate language (swearing) that others may overhear.
* Avoid discussions of your personal life/issues in public conversations that can be easily overheard.
* Monitor the volume when listening to music, voice mail, or a speakerphone that others can hear.
* Clean up after yourself and do not leave behind waste , scrap or discarded papers.
* Return tools and equipment to their proper place when finished.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



# *Truck Service, Inc.*
2012

## **800** Life-Threatening Illnesses in the Workplace
Effective Date: 1/1/2013
Revision Date:

Employees with life-threatening illnesses, such as cancer, heart disease, and AIDS, often wish to continue their normal pursuits, including work, to the extent allowed by their condition. TSI supports these endeavors as long as employees are able to meet acceptable performance standards. As in the case of other disabilities, TSI will make reasonable accommodations in accordance with all legal requirements, to allow qualified employees with life-threatening illnesses to perform the essential functions of their jobs.

Medical information on individual employees is treated confidentially. TSI will take reasonable precautions to protect such information from inappropriate disclosure. Managers and other employees have a responsibility to respect and maintain the confidentiality of employee medical information. Anyone inappropriately disclosing such information is subject to disciplinary action, up to and including termination of employment.

Employees with questions or concerns about life-threatening illnesses are encouraged to contact the President or TSI's Employee Assistance Program for information and referral to appropriate services and resources.

Electronically Filed 06/21/2022 13:37 / CV 22 964993 / Confirmation Nbr. 2581354 / CLLMD



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

# Court of Common Pleas

**New Case Electronically Filed: SERVICE REQUEST**
**June 21, 2022 13:37**

By: CASEY P. O'BRIEN 0072378

Confirmation Nbr. 2581354

WESLEY REDDING                                          CV 22 964993

     vs.

TRUCK SERVICE, INC.                          **Judge:** SHERRIE MIDAY

**Pages Filed:** 1

IN THE COMMON PLEAS COURT
CUYAHOGA COUNTY, OHIO

WESLEY REDDING          :
338 Irma Drive             :
Chardon, OH 44024      :     CASE NO.
                                :
          Plaintiff        :     JUDGE
                                :
vs.                             :     **REQUEST FOR SERVICE**
                                :
                                :
TRUCK SERVICE, INC.      :
c/o Donald L. Jones, Statutory Agent   :
3404 Superior Avenue       :
Cleveland, Ohio 44114      :
                                :
         Defendant       :

      Please serve the Defendant, Truck Service, Inc., c/o Donald L. Jones, Statutory

Agent, with summons and a copy of the Complaint, according to law by certified mail,

return receipt requested at:

               3404 Superior Avenue
               Cleveland, Ohio 44114

      If service of process by certified mail is returned by the postal authorities with an

endorsement of "Refused" or "Unclaimed" the undersigned waives notice of same by the

Clerk and requests ordinary mail service in accordance with Civil Rule 4.6(C) or 4.6(D).

                             _____
                             CASEY P. O'BRIEN [#0072378]
                             IBOLD & O'BRIEN
                             401 South Street
                             Chardon, OH 44024
                             (440) 285-3511
                             (440)-285-3363 fax
                             casey@iboldobrien.com
                             Attorney for Plaintiff

IBOLD & O'BRIEN
401 SOUTH STREET, CHARDON, OHIO 44024
(440) 285-3511

## THE COURT OF COMMON PLEAS, CIVIL DIVISION
## CUYAHOGA COUNTY, OHIO

Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

WESLEY REDDING
**Plaintiff**

**V.**

TRUCK SERVICE, INC.
**Defendant**

**CASE NO.** CV22964993

**JUDGE** SHERRIE MIDAY

# SUMMONS  SUMC  CM

**Notice ID:** 47883318



From: WESLEY REDDING                P1
338 IRMA DRIVE
CHARDON OH 44024

Atty.: CASEY P O'BRIEN
401 SOUTH STREET
CHARDON, OH 44024-0000

To: TRUCK SERVICE, INC.            D1
CO DONALD L. JONES
3404 SUPERIOR AVENUE
CLEVELAND OH 44114

**NOTICE TO THE DEFENDANT:**

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff.  You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.us/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**, you will lose valuable rights. The Court will decide the case in favor of the Plaintiff and grant the relief requested in the **Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit, the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.



**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**

**Date Sent:** 06/22/2022

By_____
**Deputy**

CMSN130

**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 07/04/2022

CERTIFIED MAIL SOLUTIONS INC.:

The following is the delivery information for Certified Mail™/RRE item number 9314 8001 1300 3546 7917 62. Our records indicate that this item was delivered on 06/28/2022 at 01:35 p.m. in CLEVELAND, OH 44114. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number:  CV22064993 R47893318/ TRUHOLSERVICE INC / 2022 064993
Sent To:  3404 SUPERIOR AVENUE  CLEVELAND, OH 44114



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**ANSWER OF...**
**July 25, 2022 13:50**

By: KEITH D. THOMAS 0038533

Confirmation Nbr. 2609668

WESLEY REDDING                                         CV 22 964993

    vs.

TRUCK SERVICE, INC.                          **Judge:** SHERRIE MIDAY

**Pages Filed:** 9

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| WESLEY REDDING | ) CASE NO. CV 22 964993 |
| | ) |
| Plaintiff | ) |
| | ) JUDGE SHERRIE MIDAY |
| v. | ) |
| | ) **ANSWER OF DEFENDANT TO** |
| | ) **PLAINTIFF'S COMPLAINT WITH** |
| TRUCK SERVICE, INC. | ) **DEMAND FOR DISCLOSURE OF** |
| | ) **PRAYER** |
| | ) |
| Defendant | ) (Jury demand endorsed hereon) |

Now comes Defendant, Truck Service, Inc., by and through the undersigned, and for their

Answer to Plaintiff's Complaint and states as follows:

## PARTIES, JURISDICTON & VENUE

1. Defendant admits the allegations contained in Paragraphs 1, 2 5, 6, 7, 8, 9, 10 and
11 of Plaintiff's Complaint for want of knowledge.

2. Defendant denies the allegations contained in Paragraphs 3, 4, and 12 of
Plaintiff's Complaint for want of knowledge.

## ANSWER TO COUNT ONE

3. Defendant incorporates, as if fully re-written herein, their complete answer to
Paragraphs 1 through 12 of Plaintiff's Complaint, as set forth above.

4. Defendant denies the allegations contained in Paragraphs 14, 15, 16, 17, 18, 19,
20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33 and 34 of Plaintiff's Complaint.

## ANSWER TO COUNT TWO

5. Defendant incorporates, as if fully re-written herein, their complete answer to
Paragraphs 1 through 34 of the Plaintiff's Complaint, as set forth above.

6.     Defendant admits the Plaintiff was hired on August 1, 2016 as a Service Advisor as alleged in Paragraph 36 of Plaintiff's Complaint. Defendant admits that he became a Part Stock Clerk/Penske, on June 9, 2017 as alleged in Paragraph 36 of Plaintiff's Complaint. Defendant denies the remaining allegations contained in Paragraph 36 of Plaintiff's Complaint.

7.     Defendant admits the allegations contained in Paragraphs 37 and 38 of Plaintiff's Complaint.

8.     Defendant denies the allegations contained in Paragraphs 39, 40, 41, 42 43, 44, and 45 of Plaintiff's Complaint

## ANSWER TO COUNT THREE

9.     Defendant incorporates, as if fully re-written herein, their complete answer to Paragraphs 1 through 45 of the Plaintiff's Complaint, as set forth above.

10.    Defendant denies the allegations contained in Paragraphs 47, 48, 49, 50 and 51 of Plaintiff's Complaint.

## ANSWER TO COUNT FOUR

11.    Defendant incorporates, as if fully re-written herein, their complete answer to Paragraphs 1 through 51 of the Plaintiff's Complaint, as set forth above.

12.    Defendant admits Mr. Bowden was hired in 2018 as alleged in Paragraph 53 of Plaintiff's Complaint. Defendant denies the remaining allegations contained in paragraph 53 of the Plaintiff's Complaint.

13.    Defendant admits that Mr. Bowden is an African American as alleged 54 in Paragraph 54 of Plaintiff's Complaint. Defendant admits Mr. Bowden is younger than the Plaintiff, as alleged in Paragraph 54 of Plaintiff's Complaint. Defendant denies the remaining allegations contained in Paragraph 54 of Plaintiff's Complaint.

14.     Defendant denies the allegations contained in Paragraphs 55, 56, 57, 58, and 59 of Plaintiff's Complaint.

## ANSWER TO COUNT FIVE

15.     Defendant incorporates, as if fully re-written herein, their complete answer to Paragraphs 1 through 59 of the Plaintiff's Complaint, as set forth above.

16.     Defendant denies the allegations contained in Paragraphs 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 72 and 73 of Plaintiff's Complaint.

17.     Defendant admits the allegations contained in Paragraph 71 of Plaintiff's Complaint.

## ANSWER TO COUNT SIX

18.     Defendant incorporates, as if fully re-written herein, their complete answer to Paragraphs 1 through 73 of Plaintiff's Complaint, as set forth above.

19.     Defendant denies the allegations contained in Paragraphs 75 and 76 of Plaintiff's Complaint for want of knowledge.

20.     Defendant denies the allegations contained in Paragraphs 77, 78, 79, 80, and 82 of Plaintiff's Complaint.

21.     Defendant admits the allegations contained in Paragraph 81 of Plaintiff's Complaint.

## ANSWER TO COUNT SEVEN

22.     Defendant incorporates, as if fully re-written herein, their complete answer to Paragraphs 1 through 82 of Plaintiff's Complaint, as set forth above.

23.     Defendant denies the allegations contained in Paragraphs 84, 85, 86, 87 and 90 of Plaintiff's Complaint for want of knowledge.

24.     Defendant denies the allegations contained in Paragraphs 88, 91, 92, 93, 94, and 95 of Plaintiff's Complaint.

25.     Defendant admits the allegations contained in Paragraph 89 of Plaintiff's Complaint.

## ANSWER TO COUNT EIGHT

26.     Defendant incorporates, as if fully re-written herein, their complete answer to Paragraphs 1 through 95 of the Plaintiff's Complaint, as set forth above.

27.     Defendant denies the allegations contained in Paragraph 97 of Plaintiff's Complaint for want of knowledge.

28.     Defendant denies the allegations contained in Paragraphs 98, 99, 100, 101, 102, 103, 104, 105, 106, and 107 of Plaintiff's Complaint.

## ANSWER TO COUNT NINE

29.     Defendant incorporates, as if fully re-written herein, their complete answer to Paragraphs 1 through 107 of the Plaintiff's Complaint, as set forth above

30.     Defendant denies the allegations contained in Paragraphs 109, 110, 111, 112, 113, 114, 115, and 116 of Plaintiff's Complaint.

## ANSWER TO COUNT TEN

31.     Defendant incorporates, as if fully re-written herein, their complete answer to Paragraphs 1 through 116 of the Plaintiff's Complaint, as set forth above.

32.     Defendant denies the allegations contained in Paragraphs 118, 120, 121, 122, and 123 of Plaintiff's Complaint.

33.    Defendant specifically denies negligence in any manner, whatsoever, as alleged in Paragraph 119 of Plaintiff's Complaint. Defendant denies the remaining allegations contained in Paragraph 119 of Plaintiff's Complaint.

## ANSWER TO COUNT ELEVEN

34.    Defendant incorporates, as if fully re-written herein, their complete answer to Paragraphs 1 through 123 of the Plaintiff's Complaint, as set forth above.

35.    Defendant denies the allegations contained in Paragraphs 125, 126, and 127 of Plaintiff's Complaint.

## ANSWER TO COUNT TWELVE

36.    Defendant incorporates, as if fully re-written herein, their complete answer to Paragraphs 1 through 127 of the Plaintiff's Complaint, as set forth above.

37.    Defendant denies the allegations contained in Paragraphs 129, 130, 131, 132, 133, and 134 of Plaintiff's Complaint.

## ANSWER TO COUNT THIRTEEN

38.    Defendant incorporates, as if fully re-written herein, their complete answer to Paragraphs 1 through 134 of the Plaintiff's Complaint, as set forth above.

39.    Defendant admits the allegations contained in Paragraph 136 of Plaintiff's Complaint.

40.    Defendant denies the allegations contained in Paragraphs 137 and 138 of Plaintiff's Complaint for want of knowledge.

41.    Defendant denies the allegations contained in Paragraphs 139, 140, and 142 of Plaintiff's Complaint.

42.     Defendant specifically denies negligence in any manner whatsoever as alleged in Paragraph 141 of Plaintiff's Complaint.  Defendant denies the remaining allegations contained in Paragraph 141 of Plaintiff's Complaint of want of knowledge.

## ANSWER TO COUNT FOURTEEN

43.     Defendant incorporates, as if fully re-written herein, their complete answer to Paragraphs 1 through 142 of the Plaintiff's Complaint, as set forth above.

44.     Defendant admits the allegations contained in Paragraph 144 of Plaintiff's Complaint.

45.     Defendant denies the allegations contained in Paragraphs 145 and 146 of Plaintiff's Complaint for want of knowledge.

46.     Defendant denies the allegations contained in Paragraphs 147 and 148 of Plaintiff's Complaint.

## ANSWER TO COUNT FIFTEEN

47.     Defendant incorporates, as if fully re-written herein, their complete answer to Paragraphs 1 through 148  of the Plaintiff's Complaint, as set forth above.

48.     Defendant admits the allegations contained in Paragraphs 150, 153, 154, 155, 156, 157, and 158 of Plaintiff's Complaint.

49.     Defendant denies the allegations contained in Paragraphs 151, and 159 of Plaintiff's Complaint for want of knowledge.

50.     Defendant denies the allegations contained in Paragraphs 152, 160, and 161 of Plaintiff's Complaint.

**ANSWER TO COUNT SIXTEEN**

51.     Defendant incorporates, as if fully re-written herein, their complete answer to Paragraphs 1 through 161 of Plaintiff's Complaint, as set forth above.

52.     Defendant denies the allegations contained in Paragraph 163 of Plaintiff's Complaint.

**AFFIRMATIVE DEFENSES**

**FIRST DEFENSE**

1.     Plaintiff has failed to state a claim upon which relief may be granted to Plaintiff by this answering Defendant.

**SECOND DEFENSE**

*2.*     Plaintiff's claims fail to the extent that Plaintiff has not fulfilled and/or properly exhausted all administrative, jurisdictional, or procedural pre-requisites to actions under R.C.§4112.01 *et seq.*

**THIRD DEFENSE**

3.     Plaintiff's claims have failed to the extent that he has failed to fulfill and/or properly exhaust all administrative, or jurisdictional pre-requisites to actions under said acts.

**FOURTH DEFENSE**

4.     Plaintiff's remedies, if any, are barred, or limited, to the extent that Defendant would have terminated the Plaintiff in any event, on the basis of the 'after acquired evidence.'

**FIFTH DEFENSE**

5.     The Plaintiff's termination of his employment was lawful, and not in violation of any Ohio or Federal law.

### SIXTH DEFENSE

6.     Plaintiff's damages, if any, are barred and limited to the extent that he has failed to mitigate his alleged damages.

### SEVENTH DEFENSE

7.     This court does not have general jurisdiction over the claims that are the subject of Plaintiff's Complaint.

### EIGHTH DEFENSE

8.     Plaintiff has failed to properly commence this lawsuit within the applicable statute of limitations.

**WHEREFORE**, having fully answered, Defendant Truck Service, Inc. by and through the undersigned, requests that Plaintiff's Complaint be dismissed, with prejudice, and that Plaintiff be ordered to pay Defendant's attorney fees and costs, and to be awarded any other relief that is just and proper.

Respectfully submitted,

*/s/ Keith D. Thomas*
**KEITH D. THOMAS (0038533)**
*Attorney for Defendant*
6480 Rockside Woods Blvd. South, #145
Independence, Ohio  44131
(216) 696-6454 [Telephone]
(216) 696-0227 [Facsimile]

### JURY DEMAND

Defendant hereby demands a Trial by Jury of the maximum number of members allowed by law.

*/s/ Keith D. Thomas*
**KEITH D. THOMAS (0038533)**
*Attorney for Defendant*

## DEMAND FOR DISCLOSURE OF PRAYER

Defendant hereby demands, pursuant to Rule 8(A) of the Ohio Rules of Civil Procedure that the Plaintiff disclose to Defendant the amount of his prayer within fifteen (15) days hereof.


*/s/ Keith D. Thomas*
**KEITH D. THOMAS (0038533)**
*Attorney for Defendant*


## CERTIFICATE OF SERVICE

This is to certify that the foregoing has been electronically filed this 25th day if July, 2022 and will be accessible to all parties through the Court's electronic filing system.


*/s/ Keith D. Thomas*
**KEITH D. THOMAS (0038533)**
*Attorney for Defendant*

skip to main content

Print

# CASE INFORMATION

## CV-22-964993 WESLEY REDDING vs. TRUCK SERVICE, INC.

### Docket Information

| Filing Date | Docket Party | Docket Type | Docket Description | View Image |
|---|---|---|---|---|
| 07/25/2022 | D1 | AN | ANSWER FILED BY D1 TRUCK SERVICE, INC. ATTORNEY KEITH D THOMAS 0038533 ANSWER OF DEFENDANT TO PLAINTIFF'S COMPLAINT WITH DEMAND FOR DISCLOSURE OF PRAYER | 📄 |
| 07/06/2022 | N/A | SR | USPS RECEIPT NO. 47883318 DELIVERED BY USPS 06/28/2022 TRUCK SERVICE, INC. PROCESSED BY COC 07/06/2022. | |
| 06/23/2022 | D1 | SR | SUMS COMPLAINT(47883318) SENT BY CERTIFIED MAIL. TO: TRUCK SERVICE, INC. 3404 SUPERIOR AVENUE CLEVELAND, OH 44114 | 📄 |
| 06/22/2022 | N/A | SR | SUMMONS E-FILE COPY COST | |
| 06/22/2022 | D1 | CS | WRIT FEE | |
| 06/21/2022 | N/A | SF | JUDGE SHERRIE MIDAY ASSIGNED (RANDOM) | |
| 06/21/2022 | P1 | SF | LEGAL RESEARCH | |
| 06/21/2022 | P1 | SF | LEGAL NEWS | |
| 06/21/2022 | P1 | SF | LEGAL AID | |
| 06/21/2022 | P1 | SF | COURT SPECIAL PROJECTS FUND | |
| 06/21/2022 | P1 | SF | COMPUTER FEE | |
| 06/21/2022 | P1 | SF | CLERK'S FEE | |
| 06/21/2022 | P1 | SF | DEPOSIT AMOUNT PAID CASEY P O'BRIEN | |
| 06/21/2022 | N/A | SF | CASE FILED: COMPLAINT, SERVICE REQUEST | 📄 |

Only the official court records available from the Cuyahoga County Clerk of Courts, available in person, should be relied upon as accurate and current.

Website Questions or Comments.

Copyright © 2022 PROWARE. All Rights Reserved. 1.1.258