UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WESLEY REDDING, | ) | Case No.: 1:22 CV 1333 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| TRUCK SERVICE, INC., | ) | |
| | ) | |
| Defendant | ) | ORDER |

Currently pending before the court in the above-captioned case is Defendant Truck Service, Inc.'s ("Defendant" or "TSI") Motion for Partial Judgment on the Pleadings ("Motion") (ECF No. 11). For the reasons that follow, the court grants Defendant's Motion and dismisses Counts III, IV, VI, VII, VIII, IX, X, XI, XII, XIII, and XV of Plaintiff Wesley Redding's ("Plaintiff" or "Redding") Complaint.

## I. BACKGROUND

TSI hired Plaintiff as a Service Advisor at its Valley View, Ohio location on August 1, 2016. (Compl. ¶ 5, ECF No. 1-1.) Plaintiff was hired as an at-will employee. (*Id.* ¶ 6.) On June 9, 2017, TSI moved Plaintiff to the role of Parts Stock Clerk/Penske. (*Id.* ¶ 36.) Plaintiff held that position until TSI terminated his employment on August 3, 2020. (*Id.* ¶ 7.) At all times relevant to Redding's Complaint, TSI employed Matt Lewis ("Lewis") as Regional Manager, Jim Lee ("Lee") as Assistant General Manager at its Valley View location, Don Snyder ("Snyder") as a Service Advisor at its Valley View location, and Bruce Zavotka ("Zavotka") as an Outside Sales Representative at its Superior Avenue and Valley View locations. (*Id.* ¶¶ 8–11.)

On June 21, 2022, Plaintiff filed a Complaint (ECF No. 1-1) in the Cuyahoga County Court of Common Pleas alleging, in relevant part, the following violations by TSI: gender discrimination (Count III); racial discrimination (Count IV); wrongful termination in violation of public policy (Count VI); intentional tort (Count VII); civil assault (Count VIII); intentional infliction of emotional distress ("IIED") (Count IX); negligent infliction of emotional distress ("NIED") (Count X); interference with a business relationship (Count XI); slander *per se/per quod* (Count XII); *respondeat superior* (Count XIII); and breach of employee contract (Count XV). On July 28, 2022, TSI removed the action to federal court under 28 U.S.C. §§ 1331, 1367, 1441(a), and 1446. (Notice of Removal, ECF No. 1.)

On September 9, 2022, TSI filed a Motion for Partial Judgment on the Pleadings (ECF No. 11) under Federal Rule of Civil Procedure 12(c). TSI seeks dismissal of Counts III, IV, VI, VII, VIII, IX, X, XI, XII, and XV because they are based on the conduct of employees who were not acting within the scope of their employment by TSI, and otherwise fail to allege sufficient facts to give rise to liability for TSI. (Mot. at 2, ECF No. 11.) TSI also argues that Counts VII and XII are time-barred, and that Count XIII must be dismissed because *respondeat superior* is not an independent cause of action. *Id.* Redding submitted a Response (ECF No. 13) to the Motion on October 21, 2022, and TSI entered a Reply (ECF No. 14) on November 4, 2022.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." The standard for evaluating a motion for judgment on the pleadings is identical to the standard a court applies to a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See*

*Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001); *Tinney v. Richland Cty.*, No. 1:14 CV 703, 2015 WL 542415, at *3 (N.D. Ohio Feb. 10, 2015). The court examines the pleadings of the parties and evaluates the legal sufficiency of the plaintiff's claim. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993).

The United States Supreme Court clarified the law regarding what a plaintiff must plead in order to survive a motion made pursuant to Rule 12(b)(6) in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. LAW AND ANALYSIS

**A.     Counts III and IV: Gender and Racial Discrimination**

Plaintiff alleges that, due to gender and racial discrimination against him as a white male, he suffered adverse employment actions including denial of raises and advancement opportunities, "exceedingly long probationary periods," and his ultimate termination. (Compl. ¶¶ 49, 58, ECF No. 1-1.) Plaintiff also asserts that TSI's employees made derogatory racial and gender-related remarks

in front of and to Plaintiff, with no corrective action take by TSI. (*Id.* ¶¶ 50, 57.) Generally, to establish a *prima facie* case for reverse discrimination under Title VII of the Civil Rights Act of 1964 and/or under O.R.C. § 4112, a plaintiff must show "(1) that 'background circumstances exist to support the suspicion that the defendant is the unusual employer that discriminates against the majority;' (2) that Plaintiff 'was qualified for the job;' (3) that Plaintiff 'suffered an adverse employment decision;' and (4) that Plaintiff was 'treated differently than similarly situated non-protected employees.'" *Leavey v. City of Detroit*, 467 F. App'x 420, 424 (6th Cir. 2012) (quoting *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir.2008)); *see also Courie v. Alcoa Wheel & Forged Prod.*, 577 F.3d 625, 632 (6th Cir. 2009) (identifying the same elements in the context of § 4112 reverse discrimination claims). Defendant argues that Plaintiff's Complaint fails to allege "background circumstances" suggesting that TSI discriminates against white people or males, or that similarly situated women or non-white people were treated differently. (Reply at 2, ECF No. 14.)

Turning first to Plaintiff's gender discrimination claim, the court finds that Plaintiff has failed to plead facts sufficient to support a *prima facie* case that reverse discrimination precipitated his termination or any other adverse employment action. Plaintiff alleges that Lee told Plaintiff, in front of Lewis, Zavotka, and Snyder, that the "first time one female advisor walks through that door, you're gone." (Compl. ¶¶ 47–48, ECF No. 1-1.) Plaintiff provides no further supporting facts beyond conclusory statements that TSI undertook adverse employment actions against him for discriminatory reasons, and that TSI failed to reprimand its employees for other, unspecified gender-related remarks. (*Id.* ¶¶ 49–51.) Plaintiff does not plead "background circumstances" indicating that TSI discriminates against males, nor does he plead facts suggesting that similarly situated female employees were treated differently. For these reasons, Count III of Plaintiff's Complaint must be dismissed.

Plaintiff has also failed to establish a *prima facie* case that reverse racial discrimination

-4-

motivated his termination or any other adverse employment action. Plaintiff alleges that in 2018, TSI hired David Bowden, a younger African-American man with less experience than Plaintiff, as a Service Advisor. (Compl. ¶¶ 53–54.) TSI had previously demoted Plaintiff from Service Advisor to Parts Stock Clerk/Penske on June 9, 2017. (*Id.* ¶ 36.) Plaintiff also asserts that Lewis referred to Bowden as "Black Wes" on March 11 and March 12, 2020. (*Id.* ¶¶ 56–57.) Plaintiff claims that he was overlooked for the Service Advisor position due to his race, but he does not allege any facts that connect his removal from that position to Bowden's selection for the position, which did not occur until at least six months later. Plaintiff does not assert that he was even seeking the Service Advisor position at the time Bowden was hired, and the "Black Wes" comments were made at least 15 months after Bowden was hired and almost three years after Plaintiff was removed as a Service Advisor. The facts pleaded therefore do not indicate that Redding and Bowden were similarly situated. Furthermore, Plaintiff does not plead sufficient "background circumstances" to suggest that TSI discriminated against white employees. For these reasons, Count IV of Plaintiff's Complaint must be dismissed.

**B.      Count VI: Wrongful Termination in Violation of Public Policy**

To successfully plead a claim for wrongful termination in violation of public policy under Ohio law, a plaintiff must show:

> 1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).
> 4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

*Collins v. Rizkana*, 73 Ohio St. 3d 65, 69–70 (Ohio 1995) (quoting H. Perritt, *The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie?*, 58 U. CIN. L. REV. 397, 398–399 (1989)). The "clarity" and "jeopardy" elements are "questions of law to be determined by the court." *Id.* at 70.

Defendant argues that Plaintiff has not established the jeopardy element of his wrongful discharge claim, because the "State antidiscrimination laws" Plaintiff references as the source of the policy violated by his termination themselves contain adequate remedies for discriminatory termination. (Mot. at 11–12, ECF No. 11.) Plaintiff acknowledges in his Response that "anti-discrimination laws including workplace sexual harassment, age discrimination, and racial discrimination are all protected by existing public policy[,]" but contends that the jeopardy element is nonetheless satisfied because of "the additional circumstances of an employer failing to react to constant employee requests to take action against clearly discriminatory practices[.]" (Resp. at 7, ECF No. 13.) Defendant asserts in its Reply that there is no legal authority for Plaintiff's explanation, and that the statutory bases of Plaintiff's stated public policy interest are either protected by statutory remedies (O.R.C. § 4112 and Title VII), or inapplicable to non-government corporations (42 U.S.C. § 1983).

Defendant's interpretation of the law is correct, and Plaintiff's claim for wrongful termination therefore fails. This court has held that, under Ohio law, a plaintiff cannot maintain a separate wrongful discharge claim based on actions that are "1) prohibited by federal and state employment law statutes and 2) for which those statutes provide adequate remedies." *Morr v. Kamco Indus., Inc.*, 548 F. Supp. 2d 472, 484 (N.D. Ohio 2008) (citing *Leininger v. Pioneer Nat'l Latex*, 115 Ohio St.3d 311, 317 (Ohio 2007)). Ohio Revised Code § 4112, which embodies the state's antidiscrimination law, provides remedies for discriminatory acts, as does Title VII. *See* O.R.C. § 4112.99 ("Whoever

violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief."); *Carrasco v. NOAMTC Inc.*, 124 F. App'x 297, 304 (6th Cir. 2004) ("Because [Plaintiff] has a remedy available to him under both Title VII and the OCRA, we find that he cannot have that same claim [for wrongful discharge] under Ohio common law."). Plaintiff concedes that his antidiscrimination interests "are all protected by existing public policy." (Resp. at 7, ECF No. 13.) Plaintiff thus cannot establish the jeopardy element of his wrongful discharge claim, and Count VI must therefore be dismissed.

C. **Count VII: Intentional Tort**

To establish an employer's liability for an intentional tort under Ohio law, a plaintiff must show that "the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur." O.R.C. § 2745.01. The statute further provides that "'substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death." *Id.* The scope of an employer's liability for intentional torts "cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury." *Lucio v. Levy Env't Servs. Co.*, 173 F. Supp. 3d 558, 567 (N.D. Ohio 2016), *aff'd*, 670 F. App'x 889 (6th Cir. 2016) (quoting *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 263, 273–74 (Ohio 2008)).

Plaintiff has not alleged a plausible claim of intentional tort. Plaintiff asserts that Defendant "failed to follow the mandated protocols by requiring two (2) infected individuals who were displaying obvious symptoms of COVID 19 to continue to work their shift without wearing any protective gear," and that Plaintiff was infected with COVID-19 as a result. (Compl. ¶ 88, ECF No.

1-1.) Plaintiff contends that Defendent "exhibited a conscious disregard for COVID-19 protocols ... thereby acting with deliberate intent to cause injury, disease, condition or death to employees[,]" but disregard of protocols does not, without further supporting factual assertions, exhibit TSI's deliberate intent that its employees become infected with COVID-19. (*Id.* ¶ 92.) Plaintiff also describes Defendant's failure to adhere to COVID-19 protocols as "neglect" and "willful, wanton and reckless, malicious and/or in complete disregard to the rights of the Plaintiff," but these characterizations again fall short of the deliberate intent required to establish a colorable claim for intentional tort. (*Id.* ¶¶ 93, 95.) Plaintiff provides no factual assertions suggesting that TSI intended for him or any other employee to become infected. In his Response, Plaintiff only maintains in conclusory fashion that "[t]he allegations support the contention that the employer specifically desired to injure the employee." (Resp. at 7, ECF No. 13.) The court finds that this is not the case, and Count VII must therefore be dismissed.

**D.      Count VIII: Civil Assault**

Plaintiff's civil assault claim is time-barred. Ohio law requires that a civil action for assault be commenced within one year after the cause of action accrues. *See* O.R.C. § 2305.111(B). In cases such as this where Plaintiff knew the identify of those who allegedly committed the assault at the time of the alleged assault, the cause of action accrues on the date on which the alleged assault occurred. *Id.* Plaintiff's Complaint identifies a number of alleged assaults dating from March 29, 2017 to June 11, 2020. (Compl. ¶¶ 99–103, ECF No. 1-1.) These and any other alleged assaults occurring before his termination on August 3, 2020 would have occurred nearly two years before Redding filed his Complaint on June 21, 2022. (*Id.* ¶ 7.) Plaintiff's civil assault claim was thus filed after the expiration of the applicable limitation period. Plaintiff maintains in his Response that the

court should preserve the claim so that discovery may "verify whether additional assaults had taken place that may be within the applicable statute of limitations[,]" but purely speculative violations cannot save his claim. (Resp. at 8, ECF No. 13.) Count VIII must therefore be dismissed.

### E. Count IX: Intentional Infliction of Emotional Distress

To establish a claim for IIED under Ohio law, a plaintiff must show that,

> (1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

*Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1110 (6th Cir. 2008) (quoting *Ekunsumi v. Cincinnati Restoration, Inc.*, 120 Ohio App.3d 557, 698 (Ohio Ct. App. 1997)). Liability for IIED does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities ... plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language[.]" *Yeager v. Loc. Union*, 6 Ohio St. 3d 369, 375 (Ohio 1983), *abrogated on other grounds by Welling v. Weinfeld*, 113 Ohio St. 3d 464 (Ohio 2007) (quoting Restatement (Second) of Torts § 46 cmt. d (AM. LAW INST. 1965)).

Plaintiff has not alleged a plausible claim of IIED. Plaintiff does not specify what statements and/or incidents in particular support his IIED claim, but refers generally to sexual harassment and a "hostile work environment." (Compl. ¶¶ 111–12, ECF No. 1-1.) In Count I of his Complaint, which claims sexual harassment in a hostile work environment, Redding alleges that Lewis, Snyder, Lee, and Zavotka made offensive sexual remarks about Redding's body and sexual preference, such as

stating that Plaintiff "sucks dick[,]" telling Plaintiff to "pull down your pants, man[]," and commenting that Plaintiff was "having vagina issues." (*Id.* ¶ 16.) In Count VIII alleging civil assault, Plaintiff asserts that Lewis, Snyder, and Lee directed threats toward Plaintiff, such as stating intent to "beat Plaintiff's ass[,]" "busting his kneecaps," and "sticking Plaintiff with a knife[.]" (*Id.* ¶ 99.) These statements, while abhorrent, fall squarely within the exception to IIED liability for "insults, indignities, [and] threats[.]" Restatement (Second) of Torts § 46 cmt. d (AM. LAW INST. 1965). Furthermore, Redding's allegations of "mental anguish ... that no reasonable man could be expected to endure" and "emotional injury [] so severe and debilitating [] that a reasonable person ... would be unable to cope" are conclusory and lack indicia of the emotional injury suffered. *See Hout v. City of Mansfield*, 550 F. Supp. 2d 701, 744 (N.D. Ohio 2008) (citing *Paugh v. Hanks*, 6 Ohio St.3d 72, 78 (Ohio 1983) ("A non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia.")) In his Response, Plaintiff argues that Defendant has downplayed the seriousness of his emotional distress, and that a jury would disagree with Defendant's assessment. (Resp. at 9, ECF No. 13.) This argument cannot save a claim that is not sufficiently alleged in Plaintiff's Complaint. For these reasons, Count IX must be dismissed.

### F.     Count X: Negligent Infliction of Emotional Distress

This court has recognized that "Ohio courts do not recognize a separate tort for negligent infliction of emotional distress in the employment context." *Mikan v. Arbors at Fairlawn Care, L.L.C.*, 2015 WL 5604666, at *2 (N.D. Ohio Sept. 23, 2015) (quoting *Williams v. York Int'l Corp.*, 63 F. App'x 808, 814 (6th Cir. 2003)). Ohio courts have only found exception to this rule where a

plaintiff employee witnesses an accident and suffers serious and foreseeable emotional injury as a result. *See, e.g.*, *Williams*, 63 F. App'x at 814 ("[I]n Ohio, '[l]iability for negligent infliction of emotional distress arises where a bystander to an accident suffers serious and foreseeable emotional injuries.'"); *Schultz v. Barberton Glass Co.*, 447 N.E.2d 109 (Ohio 1983) (finding NIED without a contemporaneous physical injury where a large sheet of glass crashed into the windshield of the plaintiff's vehicle and the plaintiff suffered "serious emotional distress" as a result).

Plaintiff has not alleged a plausible claim of NIED. Plaintiff asserts that he "witnessed and/or experienced a real or impending danger to himself and other employees[,]" but he provides no detail as to the source or nature of that danger, and at any rate, observing circumstances that present the danger of an accident occurring is distinct from witnessing an actual accident. (Compl. ¶ 118.) The allegations in this Count are otherwise conclusory and devoid of factual support. Furthermore, Plaintiff concedes in his Response that "he did not witness an accident[,]" but contends that "the egregious actions of his employer were so serious and foreseeable that one could only conclude that emotional injuries would result." (Resp. at 9, ECF No. 13.) Besides the absence of factual detail as to what actions TSI actually took that may have caused Redding emotional distress, the mere fact that Plaintiff was not actually a bystander to any accident is dispositive of his claim under Ohio law. *See Williams*, 63 F. App'x at 814. Count X is therefore dismissed.

**G.     Count XI: Interference with Business Relationships**

To establish a claim for tortious interference with a business relationship under Ohio law, a plaintiff must show, "(1) a business relationship; (2) the wrongdoer's knowledge of the relationship; (3) the wrongdoer's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting

damages." *Barrio Bros., LLC v. Revolucion, LLC*, 2020 WL 3547014, at *7 (N.D. Ohio June 30, 2020) (quoting *N. Chem. Blending Corp., Inc. v. Strib Indus., Inc.*, 2018 WL 4043487, at *6 (Ohio Ct. App. Aug. 23, 2018)). The Sixth Circuit has held that "[a] vague assertion that a party interfered with certain unspecified business relationships is insufficient to state a claim." *Id.* (citing *Wilkey v. Hull*, 366 F. App'x 634, 638 (6th Cir. 2010)).

Plaintiff has not alleged a plausible claim of tortious interference in a business relationship. First, Plaintiff alleges that TSI employee Don Snyder stated that he was "going to say bad things" about Plaintiff, and that he was going to damage Plaintiff's reputation with other employers, but Plaintiff does not allege any specific actions that Snyder or others actually took to interfere with a business relationship of Plaintiff's. (Compl. ¶ 125, ECF No. 1-1.) Plaintiff alleges that he "believe[s]" that Defendant "provid[ed] inaccurate or otherwise false statements about the Plaintiff to potential employers of the Plaintiff[,]" but that is just the sort of vague allusion to an unspecified business relationship that, without more specific factual support, cannot give rise to a colorable tortious interference claim. (*Id.* ¶ 126.) Redding's only argument in response is that discovery might "allow for the acquisition of information that may lead to the further evolution of the claims[,]" but he cannot rely on potential future discovery to shore up a claim that is not plausible on the face of his Complaint. (Resp. at 10, ECF No. 13.) For these reasons, Count XI must be dismissed.

**H.     Count XII: Slander *Per Se/Per Quod***

To establish a claim for slander under Ohio law, a plaintiff must show, "(1) the defendant made a false and defamatory statement concerning another; (2) there was an unprivileged publication to a third party; (3) there exists fault amounting at least to negligence on the part of publisher; and (4) there is either accountability of the statement irrespective of special harm or the existence of

special harm caused by the publication." *Goff v. Robertson*, 2014 WL 6469347, at \*4 (N.D. Ohio Nov. 17, 2014) (citing *Watson v. Highland Ridge Water & Sewer Assn., Inc.*, 2013 WL 1749729, at \*6 (Ohio App. 4th Dist. April 10, 2013)). For a verbal statement to constitute slander *per se*, it must "consist of words which import an indictable criminal offense involving moral turpitude or infamous punishment, impute some loathsome or contagious disease which excludes one from society or tends to injure one in his trade or occupation." *Kanjuka v. MetroHealth Med. Ctr.*, 783 N.E.2d 920, 927 (Ohio Ct. App. 2002). Slander *per quod* occurs when "a statement with an apparently innocent meaning becomes defamatory through interpretation or innuendo." *Id.*

Redding has not alleged a plausible claim of slander *per se* or *per quod*. He alleges that his coworkers "harass[ed] him in front of other coworkers[,] customers and suppliers of the business, including representatives of PENSKE[,]" but does not identify specifically any false statements made, or to whom they were made. (Compl. ¶ 129, ECF No. 1-1.) Plaintiff also alleges that "Defendant's employees stated they would retaliate against him in the form of lies and bad reviews in the event he was discharged from the company[,]" but the threat of future slander is not itself slander, and Plaintiff does not allege that his former coworkers made any false statements about him following his termination. (*Id.* ¶ 130.) Plaintiff argues in his Response that discovery would strengthen his claims, because he "expect[s] that the Defendant fielded inquiries from potential future employers of the Plaintiff[,]" but Plaintiff's mere expectations do not excuse his failure to allege a colorable claim for slander *per se* or *per quod* in his Complaint.

Furthermore, a claim for slander based on the statements alluded to in Plaintiff's complaint would be time-barred. Ohio law requires that an action for slander be commenced within one year after the cause of action accrues. *See* O.R.C. § 2305.11(A). The Sixth Circuit has held that an action

for slander accrues "when the allegedly defamatory words are first spoken or published regardless of the aggrieved party's knowledge of them." *Friedler v. Equitable Life Assur. Soc. of U.S.*, 86 F. App'x 50, 53 (6th Cir. 2003) (quoting *Sabouri v. Ohio Dep't of Job & Fam. Serv.*, 763 N.E.2d 1238, 1240–41 (Ohio Ct. App. 2001)). Plaintiff does not provide specific dates for the statements he broadly alleges, but they would have occurred before his termination on August 3, 2020, well over a year before he filed his Complaint on June 21, 2022. Redding's slander claim is therefore time-barred. For these reasons, Count XII is dismissed.

I.     **Count XIII:** *Respondeat Superior*

Defendant argues that Count XIII must be dismissed because *respondeat superior* is not a standalone cause of action, but rather a theory of liability by which a plaintiff can impute liability for torts committed by an employee to the employer. (Mot. at 22–23, ECF No. 11); *see* Restatement (Third) Of Agency § 2.04 (2006) ("An employer is subject to liability for torts committed by employees while acting within the scope of their employment."). Plaintiff's Complaint does not allege any particular tortious actions of TSI's employees for which he seeks to impute liability to TSI under this Count. Plaintiff argues in his Response that Defendant's argument is "better suited for a Motion for Summary Judgment after the Discovery phase has been concluded[,]" but that assertion cannot overcome Plaintiff's failure to state an independent claim in this Count. Count XIII is therefore dismissed.

J.     **Count XV: Breach of Employment Contract**

Plaintiff alleges in Count XV that TSI's actions violated certain terms of its Employee Handbook (Compl. Ex. B) regarding overtime pay, retaliation, violence, and harassment. (Compl. ¶¶ 153–60, ECF No. 1-1.) Defendant argues that the Employee Handbook is not a contract and

creates no rights or obligations binding TSI, citing § 101 of the Handbook which states:

> Policies set forth in this handbook are not intended to create a contract, nor are they to be construed to constitute contractual obligations of any kind or a contract of employment between TSI and any of its employees. The provisions of the handbook have been developed at the discretion of management and, except for its policy of employment-at-will, may be amended or cancelled at any time, at TSI's sole discretion.

(Compl. Ex. B § 101, ECF No. 1-1.) Plaintiff acknowledges this language in his Complaint, but asserts that such a general disclaimer cannot nullify the more specific obligations set forth in the handbook with terms such as "will" and "shall." (*Id.* ¶¶151–52, 159.) He argues further in his Response that this court should adopt the standard applied by the Minnesota Supreme Court in *Hall v. City of Plainview*, 954 N.W.2d 254 (Minn. 2021), under which an employee handbook may constitute an employment contract if "(1) the terms are definite in form; (2) the terms are communicated to the employee; (3) the offer is accepted by the employee; and (4) consideration is given." *Id.* at 261 (citing *Feges v. Perkins Rests., Inc.*, 483 N.W.2d 701, 707 (Minn. 1992)). Defendant responds that *Hall* was limited to handbook policies concerning employee compensation, and that at any rate, that case is nonbinding here and contrary to Ohio case law which provides that disclaimers in employee handbooks defeat breach of contract claims without exception. (Reply at 7, ECF No. 14.)

The applicable case law makes clear that TSI's Employee Handbook is not a contract, and Redding's breach of contract claim therefore fails. The Sixth Circuit has denied breach of contract claims premised on the provisions of employee handbooks that state they are not employee contracts, and that establish that employment is at-will. *See Beaver v. RGIS Inventory Specialists, Inc.*, 144 F. App'x 452, 457 (6th Cir. 2005) (denying a breach of contract claim because the employee handbook

stated that "this is not a contract and does not give rise to enforceable rights or obligations" and therefore "[did] not create contractual rights"); *DePrisco v. Delta Air Lines, Inc.*, 90 F. App'x 790, 796 (6th Cir. 2004) (denying a breach of contract claim where the employee handbook stated "that [Plaintiff's] employment was at-will and that [Defendant] reserved the right to amend or modify the terms and conditions of employment at any time or for any reason"). TSI's Employee Handbook clearly states that "TSI may terminate the employment relationship at will at any time," that the Handbook policies "are not intended to create a contract," and that those policies "may be amended or cancelled at any time, at TSI's sole discretion." (Compl. Ex. B § 101, ECF No. 1-1.) This is exactly the sort of disclaimer that the Sixth Circuit has found to preclude employee handbook provisions from creating contractual obligations. Even if the exceptions set forth by the Supreme Court of Minnesota in *Hall* applied, Redding's claim would not qualify because the provisions upon which he relies are not sufficiently "definite in form" to create enforceable contractual obligations. For these reasons, Count XV must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the court grants Defendant Truck Service, Inc.'s Motion for Partial Judgment on the Pleadings (ECF No. 11). Accordingly, Counts III, IV, VI, VII, VIII, IX, X, XI, XII, XIII, and XV are dismissed.

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

June 14, 2023